Marina DOMBECK, Plaintiff,

v.

The MILWAUKEE VALVE COMPANY, Larry L. Carpenter, John R. Schmidt, James A. Seder, and Jayne Carlson, Defendants.

No. 92–C–561–S.

United States District Court, W.D. Wisconsin.

June 15, 1993.

Aaron N. Halstead, Lawton & Cates, Madison, WI, for plaintiff.

James R. Scott, Lindner & Marsack, Milwaukee, WI, for defendants.

## ORDER

SHABAZ, District Judge.

After jury trial judgment was entered in the above entitled matter on April 5, 1993 in favor of the plaintiff Marina Dombeck against defendant The Milwaukee Valve Company for the amount of $100,000 together with costs and injunctive relief, enjoining the defendant from assigning Larry L. Carpenter to a work area to which plaintiff is assigned and dismissing the remaining defendants. Thereafter pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure defendant Milwaukee Valve moved for judgment as a matter of law or in the alternative for a new trial.

Defendant argues it is entitled to judgment as a matter of law because there was no evidence to support the jury's verdict that plaintiff was subjected to a hostile working environment of which the defendant had knowledge. Initially plaintiff argues that the defendant has waived its right to pursue a Rule 50(b) motion by failing to renew its motion for judgment as a matter of law at the close of all evidence at trial.

At the close of plaintiff's case in the liability part of the trial defendant moved for judgment as a matter of law pursuant to Rule 50. The Court granted judgment as a matter of law in defendant's favor as to the State law battery claim and denied the remainder of the motion which was addressed to questions 1 and 2 of the proposed special verdict, whether plaintiff was subjected to a hostile working environment and whether defendant failed to take reasonable remedial

action after it knew or should have known that plaintiff was subjected to said environment.

■ Although, as argued by defendant, reservation on the motion would have made it unnecessary for defendant to restate said motion at the close of all evidence in order to preserve its right to pursue a post-trial Rule 50 motion, *see Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1346 (9th Cir.1985), nonetheless, the Court did not reserve, although the minute sheet may not so reflect as accurately as it should. A re-examination of defendant's argument concerning its Rule 50 motion after the close of plaintiff's evidence persuades the Court beyond doubt that the motion was addressed to the three proposed special verdict liability questions. The Court's order granted only that part of the motion directed to proposed question 3, which referred to the battery claim. It denied as to questions 1 and 2 addressed to hostile working environment and reasonable remedial action based on knowledge, respectively.

The text of Rule 50(b) admits of no exceptions. *Benson v. Allphin*, 786 F.2d 268, 274 (7th Cir.1986). Although the Court continued, "Unless Seventh Amendment questions are presented, the requirements of Rule 50(b) are not strictly enforced provided the prevailing party's failure to renew the motion for directed verdict did not unduly prejudice his opponent." *Id.* In *Allphin* the failure to move for directed verdict at the close of all evidence did not foreclose the presentation of a qualified immunity defense in defendant's motion for judgment notwithstanding the verdict because defendant previously pursued that defense through other recognized avenues.

The most recent discussion concerning the necessity to move for judgment as a matter of law after the close of all evidence is in *Pro Football Weekly, Inc. v. Gannett Co.*, 988 F.2d 723, 726 (7th Cir.1993), wherein the Court states as follows:

Although Gannett had not explicitly made another motion for a directed verdict at the close of all the evidence, we agree with the district court that the above discussion constitutes a sufficient renewal of Gan-

nett's earlier motion. As the district court aptly noted, "[C]ounsel for Gannett would have looked silly making an additional motion for directed verdict after the Court stated that it considered the motion already made." *Pro Football Weekly [, Inc. v. Gannett Co., Inc.]*, 1991 WL 256693, at *2 [N.D.Ill.1991]. We therefore hold that the district court did have the power to direct a verdict for Defendant. Thus we need not address the question of whether a renewal of Gannett's earlier directed verdict motion was even necessary. *Cf. Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1346 (9th Cir.1985) (reservation of ruling on motion for directed verdict "constitutes judicial indication that renewal of the motion is not necessary to preserve the moving party's rights").

Milwaukee Valve failed to move for judgment as a matter of law at the close of all the evidence in either the liability or damage phase of trial. The exceptions suggested by said defendant are without foundation. It has waived its opportunity to now pursue a Rule 50 motion. This Court did not reserve on the only Rule 50 motion which was presented during the trial, nor has defendant justified any other exception which may be available.

■ Even had defendant pursued a Rule 50 motion at trial which would have allowed it to renew said motion after trial, it could not prevail on the record before this Court. In considering a motion for judgment as a matter of law pursuant to Rule 50(b), the Court

determine[s] whether the evidence presented, combined with all reasonable inferences that may be drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the party winning the verdict. Any conflicts in the evidence must be resolved in favor of the party winning the verdict, and every permissible inference favoring that party must be drawn.

*Tennes v. Massachusetts Dept. of Revenue*, 944 F.2d 372, 377 (7th Cir.1991) (citations omitted). The Court does not evaluate the

credibility of witnesses nor otherwise weigh the evidence. *Id.* In ruling on a motion for judgment as a matter of law the Court must consider the substantive evidentiary standard of proof in determining whether the jury's verdict was sufficiently supported. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252–54, 106 S.Ct. 2505, 2512–13, 91 L.Ed.2d 202 (1985).

■ Evidence was presented that defendant Carpenter forcefully placed his foot in plaintiff's crotch and wiggled it, pulled the waistband on her pants and disclosed her undergarments on at least two occasions, slapped her on the buttocks, and pushed her in a threatening manner. Plaintiff complained to John Schmidt, her supervisor, that Carpenter had been mean to her and frequently used sexual language in her presence. The jury had every reason to accept this overwhelming evidence when determining that plaintiff was subjected to a hostile working environment. Defendant's argument in support of its motion for judgment as a matter of law after plaintiff's presentation of evidence in the liability phase suggested counsel for plaintiff lacked sufficient familiarity with factory conditions. The jury had every reason to determine that regardless of those factory conditions which may exist, defendant could not close its eyes to that intolerable sexual harassment accorded plaintiff by Carpenter which did, indeed, reach the pervasive level of a hostile working environment.

Defendant further contends that the jury's verdict concerning its knowledge of the existence of a hostile working environment is not supported by the evidence. There was considerable testimony that in 1990 plaintiff complained to her supervisor, John Schmidt, about Carpenter's offensive sexual language. Although she may not have provided the specifics of sexual harassment at that time, she certainly placed Schmidt on notice of Carpenter's offensive conduct, which had been previously brought to defendant's attention by Joanne Neuheusel and others. Terry Collins, Human Resources Officer of defendant, became aware of Carpenter's conduct, but did not commence any investigation until about October 1991, stating that he was not fully aware of the sexual abuse complaint until about that date. Plaintiff's first formal complaint was filed with the Wisconsin Equal Rights Division on or about July 25, 1991. James Seder, Chief Executive Officer and co-owner of defendant, referred any corrective action which may be necessary to John Schmidt when he became aware of plaintiff's concern. Schmidt did little investigating and provided no timely corrective action, believing, perhaps, that the conduct was not as extensive as it was later determined to be.

Jayne Carlson, defendant's occupational health nurse, was advised by Dr. Haakon P. Carlson of complaints of sexual harassment made to him by plaintiff in May 1991. The jury had evidence before it from which its members could have reasonably determined that the defendant knew or certainly should have known of the hostile working environment and failed to take appropriate remedial action. In 1990 a female employee, Joanne Neuheusel, complained to Schmidt that Carpenter was harassing her and threatening to disrupt her marriage, for which Carpenter was given a written warning that if his conduct continued he would be terminated. The jury could have also readily inferred from plaintiff's testimony that she had complained to Schmidt on numerous occasions about conduct similar to that which had been brought to his attention by Neuheusel, and often advised that she could not continue to work with Carpenter and desired a transfer. When plaintiff advised James Seder in May 1991 that she wanted a transfer, Schmidt became angered that his authority was being questioned. The jury could furthermore have determined that Jayne Carlson in May 1991 had sufficient information from plaintiff's personal physician suggesting an earlier investigation than that which defendant conducted after it had learned of plaintiff's July 25, 1991 complaint for sexual harassment filed with the Equal Employment Opportunity Commission and the Wisconsin Equal Rights Division. Even though defendant may not have been aware of all specific details of that conduct to which Carpenter subjected plaintiff, nonetheless it should have had knowledge from those complaints that plaintiff had been subjected to severe sexual harassment so pervasive as to alter her

working environment at The Milwaukee Valve Company.

The evidence was sufficient to support the jury's finding that the defendant knew or should have known that plaintiff was subjected to a hostile working environment and failed to take reasonable remedial measures in a timely fashion. Accordingly, had defendant's motion for judgment as a matter of law been considered, it would have been denied.

In the alternative defendant moves for a new trial pursuant to Rule 59 because the awards of compensatory and punitive damages are excessive and the punitive damages are not supported by the evidence.

■ A motion for a new trial pursuant to Rule 59 may be granted where the verdict is against the weight of the evidence, damages are excessive, or the trial was not fair to the moving party for some other reason. *Forrester v. White*, 846 F.2d 29, 31 (7th Cir. 1988). *Valbert v. Pass*, 866 F.2d 237, 239 (7th Cir.1989). In considering whether the trial was fair the Court may also consider questions of law arising from substantial errors in the admission or rejection of evidence or the giving or refusal of instructions. 21 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2805 (1973).

■ The jury was instructed it was to determine the amount of money that would fairly and reasonably compensate plaintiff for the mental anguish and emotional pain she suffered and which she is reasonably certain to suffer in the future as the direct result of the defendant's conduct. Plaintiff testified to her anxiety, her headaches, her frequent crying, her shaking and her nervous condition which she and her psychologist, Elizabeth E. Seebach, attributed to the sexual harassment to which plaintiff was subjected in the workplace. Seebach further testified that plaintiff suffered a generalized anxiety disorder caused by sexual harassment at the workplace, which is the same determination previously made and referred to nurse Carlson by Dr. Haakon P. Carlson. Although the amount of $25,000 may arguably be somewhat high, this Court is unable to determine that it is excessive to the point where a new trial or a remittitur should be granted. Under the circumstances the award is not excessive, and the $25,000 for compensatory damages shall stand, the Court believing that regardless of the anxiety which the plaintiff experienced in her home life, the jury could have well determined that the conduct she endured in the workplace was so egregious as to justify the amount awarded as compensatory damage. Certainly, it was not as suggested by defendant "monstrously excessive," and there was sufficient testimony to provide a "rational connection between the evidence on damages and the verdict." *Matlock v. Barnes*, 932 F.2d 658, 667 (7th Cir. 1991), defendant's brief in support, page 4.

Defendant further argues that there is no evidence to support an award of punitive damages. Without objection the jury was instructed that if it should find that:

[T]he act or omission of the defendant which proximately caused actual injury or damages to the plaintiff was maliciously or wantonly done, then the jury may, if in the exercise of discretion they unanimously choose so to do, award such amount as the jury shall unanimously agree to be proper as punitive and exemplary damages.

An act or failure to act is "maliciously" done if promoted or accompanied by ill will, or spite, or grudge, either toward the injured person individually, or toward all persons in one or more groups or categories of which the injured person is a member.

An act or failure to act is "wantonly" done if done in reckless or callous disregard of, or indifference to, the rights of one or more persons, including the injured person.

■ As aforesaid, the jury had sufficient evidence to find that defendant knew or should have known of the sexual harassment and failed to take remedial measures. There was, however, no evidence from which it could find that defendant's omission was a callous disregard of plaintiff's rights. Plaintiff was belatedly transferred by the defendant to another department where Carpenter is not employed. She is happy and content in her present employment as she has been since the October transfer to the Butterball

Division. She thought so highly of the defendant Milwaukee Valve Company that she recommended to her daughter that she become employed by the defendant. There has been no showing of ill will, spite or grudge by the defendant or its subsidiary personnel toward the injured person, Marina Dombeck, nor has there been that showing toward persons of female gender. The Neuheusel incident suggests otherwise, wherein Carpenter was disciplined and advised that if he should continue with this conduct in the future he would be discharged.

Except for Carpenter and one outburst of frustration offered by John Schmidt, the plaintiff had a friendly working relationship with her supervisors, including Carpenter, in previous times. In fact, Schmidt observed them often, taking breaks together and conversing in a friendly manner, and correctly determined that they had socialized together during an extended period of time before the rift developed between them. In any event, § 102(b)(1) and (2) of Title VII of the Civil Rights Act, 42 U.S.C. § 2000-5, effective November 21, 1991, under which plaintiff seeks punitive damages provides in part that punitive damages will be available only where "the respondent engaged in a discriminatory practice with malice." The definition of "malice" in the Court's uncontested instruction to the jury does not allow for punitive damages on the evidence presented. The instruction further provides that an act is "wantonly done" if done in reckless or callous disregard of or indifference to the rights of one or more persons, including the injured person. Again, although the defendant should have had knowledge of the pervasive hostile working environment which existed, nonetheless, it cannot be said that its failure to act earlier was in any way a reckless or callous disregard of or indifference to the rights of plaintiff Marina Dombeck or other persons. It was a negligent failure to conduct a more extensive investigation and to provide for earlier remedial measures which would have eliminated the hostile environment to which the plaintiff was subjected.

An examination of the opinion in *Soderbeck v. Burnett County*, 752 F.2d 285 (7th Cir. 1985) is persuasive, particularly that language at page 290 as stated by Circuit Judge Posner:

The distinction between deliberate and reckless wrongdoing is well captured by the Supreme Court's formulation of its holding in *Smith v. Wade:* "We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." [461 U.S. 30 at 56] 103 S.Ct. [1625] at 1640 [75 L.Ed.2d 632 (1983)].

Although there was some evidence in this case of personal spite by Kellberg toward the Soderbecks as well as political rivalry, and spite would bring the case within the first type of conduct for which punitive damages is a proper sanction, the special-verdict form, not challenged by the plaintiff, confined the jury to the second: "In terminating plaintiff Arline Soderbeck's employment with the Burnett County Sheriff's Department, did defendant Robert Kellberg act with reckless indifference to the plaintiff's rights not to be terminated for her associations or political activity?" (It is no doubt regrettable that the instructions to the jury did not define "reckless indifference," cf. *United States v. McAnally,* 666 F.2d 1116, 1119 (7th Cir. 1981); *United States v. Hanlon,* 548 F.2d 1096, 1101–02 (2nd Cir.1977), as the legal meaning of the term is unlikely to be obvious to the average juror; but no complaint was made on that score.) This formulation allowed the jury to award punitive damages even if it found that Kellberg had fired Mrs. Soderbeck not to hurt her but just to make life easier for himself; and the district judge was quite right to hold that the evidence did not permit an award of punitive damages on this basis (that is, on the basis of recklessness).

Equally helpful for its similarity to the circumstance before this Court is the portion of the dissent to hear *en banc* by Circuit Judge Cummings in *Mojica v. Gannett Co.,* 986 F.2d 1158, 1161 (7th Cir.1993):

There remains Mojica's argument that we should reinstate the punitive damage

award thrown out by the district judge on Gannett's motion for j.n.o.v. I agree with the trial judge that there was no evidence that Gannett's conduct showed "malice," "evil motive," "reckless" behavior, or "callous indifference." *Yarbrough* [*v. Tower Oldsmobile, Inc.*], 789 F.2d [508] at 514 [7th Cir.1986]. The trial judge observed that Mojica had a friendly working relationship with her supervisors, including Marv Dyson. Intentional discrimination is not per se malicious, and the Act requires evidence of malice to support an award of punitive damages. Section 102(b)(1). Because there was no evidence of malice in this case, I would not reinstate the jury's punitive damage award.

This Court also finds no reckless or callous disregard or indifference to the rights of plaintiff. There is no evidence which would support punitive damages.

Usually the Court would enter judgment as a matter of law vacating that judgment relating to $75,000 in punitive damages. However, that motion, as aforesaid, is not before the Court. The alternative, of course, is to either provide a remittitur or grant a new trial on punitive damages. Because the Court is of the opinion that not only were the punitive damages excessive but there is no basis for any such award, a remittitur is not appropriate.

■ In determining whether to grant a new trial on the issue of punitive damages where none exist, the Court reexamines retroactivity concerning the 1991 Civil Rights Act.

Defendant argues as it has from the commencement of this action that there should be no retroactivity of the Civil Rights Act of 1991 and cites *Mojica*. The Court is of the opinion that to stay its decision until *Mojica* is decided, as suggested by defendant, will be of little help because *Mojica* represents that class of case to which Circuit Judge Posner referred in *Luddington v. Indiana Bell Tel. Co.*, 966 F.2d 225, 227 (7th Cir.1992) as class 2, cases filed before the effective date of the statute but not completed by that date, that arise from acts committed before that date. *Luddington* concludes that the new Act (1991 Civil Rights) is applicable only to conduct

engaged in after the effective dates (plural because several sections carry different dates) in the act, *at least if the suit had been brought before the effective date.* (Emphasis added.)

This action is in Class 3, cases filed after the effective date that arise from acts committed before that date. Judge Posner, in discussing retroactivity, states in *Luddington* at page 229:

> The amount of care that individuals and firms take to avoid subjecting themselves to liability whether civil or criminal is a function of the severity of that sanction, and when the severity is increased they are entitled to an opportunity to readjust their level of care in light of the new environment created by the change. That is the philosophy behind the ex post facto clause and also behind the interpretive principle that presumes that a new civil statute applies only to conduct that occurs after its effective date.

This analysis, coupled with a reading of the following in *Soderbeck*, at 291, persuades the Court that punitive damages do not lie in this case:

> If one needed great subtlety to realize that one had strayed into the forbidden zone where punitive damages are a sanction, the deterrent effect of such damages would be distorted. Some people would stray into the zone unknowingly; as to them the threat of punitive damages would not deter. Others would steer far clear of the zone, not knowing where it began; as to them lawful as well as unlawful conduct would be deterred. We may therefore set it down as a condition of awarding punitive damages that the defendant almost certainly knew that what he was doing was wrongful and subject to punishment. Among the types of conduct that fit this description is conduct so contrary to our society's basic ethical principles that it can safely be assumed to have been undertaken with knowledge that it was legally as well as morally wrong, including conduct that has come to be regarded as contrary to the modern civil rights, as well as the older personal liberties, of Americans.

A fair reading of *Soderbeck* and *Ludding-ton* convinces this Court that an award of punitive damages in a Title VII case, even where commenced after the effective date of the 1991 Civil Rights Act, should not retroactively apply to that conduct committed prior to the enactment. An opportunity should be provided to readjust the defendant's level of care in light of the new environment created by the change and, more importantly, as in *Soderbeck* the deterrent effect of punitive damages would, indeed, be distorted if the defendant were sanctioned with those damages without an awareness that they existed at the time it omitted to take prompt remedial action to eliminate plaintiff's hostile working environment. A condition of awarding punitive damages must depend on the knowledge of the defendant that they existed for that conduct which it was pursuing at the time.

 As to the retroactivity of damages this Court as early as March 16, 1992 in *Julie Bettack v. M–B Company, Inc.,* 827 F.Supp. 578, determined they were not precluded from being awarded, reasoning as follows:

> District courts which have considered the issue of retroactive application of the Civil Rights Act of 1991 have been sharply divided. However, most of the courts which have considered the issue have concluded that the Act and its legislative history are ambiguous concerning whether Congress intended retroactive or prospective application of the law. *See e.g. Khandelwal v. Compuadd Corp.* [780 F.Supp. 1077, 1992 WL 5953], 1992 U.S.Dist. Lexis 448 (E.D.Va.1992). This Court agrees that neither the provisions of the Act nor the legislative history of the Act provide unambiguous statements as to Congressional intent on retroactive or prospective application of the law.

> Because the Statute and Legislative history are unclear, it becomes important to choose between the conflicting United States Supreme Court holdings in *Bradley v. School Board,* 416 U.S. 696 [94 S.Ct. 2006, 40 L.Ed.2d 476] (1974), and *Bowen v. Georgetown University Hosp.,* 488 U.S. 204 [109 S.Ct. 468, 102 L.Ed.2d 493] (1988).

> The distinction is important because *Bradley* presumes retroactive application, while *Bowen* presumes prospective application of the law.

> The Court finds that the Seventh Circuit Court of Appeals has consistently and clearly favored application of the *Bradley* rule over *Bowen. Federal Deposit Ins. Corp. v. Wright,* 942 F.2d 1089, 1095, n. 6 (7th Cir.1991). The Seventh Circuit further clarified its position in *Littlefield v. McGuffey,* [789 F.Supp. 909, 1992 WL 44655] 1992 U.S.App. Lexis 919 (Feb. 7, 1992). In *Littlefield* the Seventh Circuit applied the *Bradley* analysis to the determination of whether to retroactively apply the removal of the cap on punitive damages under the Fair Housing Amendments Act of 1988. Given the similarity between the changes at issue in this case and the changes considered under the Fair Housing Amendments Act, it is apparent that the Seventh Circuit would apply the *Bradley* analysis to the retroactivity issue here. Other district courts in this Circuit have reached the same conclusion. *Mojica v. Gannett Co., Inc.,* 779 F.Supp. 94 (N.D.Ill. 1991), *Graham v. Bodene [Bodine] Electric Co.* [782 F.Supp. 74, 1992 WL 14033], 1992 U.S.Dist. Lexis 679 (N.D.Ill.1992), *Bristow v. Drake Street, Inc.,* [1992 WL 14262] 1992 U.S.Dist. Lexis 499 (N.D.Ill.1992).

> Accordingly, this Court is obliged to presume that Congress intended retroactive application of the Statute unless it determines that manifest injustice would result from retroactive application. In determining whether manifest injustice would result from retroactive aplication [application], the Court considers three factors: "(1) The nature and identity of the parties; (2) the nature of the rights affected; and (3) the impact of the change in law on preexisting rights." *Wright,* 942 F.2d at 1096. There is no question that although this particular dispute is between private parties, cases involving sexual discrimination and the legislation under consideration are matters of public concern which favor retroactive application.

> The second factor requires the Court to determine whether retroactive application

"would infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley,* 416 U.S. at 720 [94 S.Ct. at 2020]. The claims in question here concern the enhancement of certain remedies and the availability of a jury trial. Neither the right to a bench trial nor the right to limitation of damages constitute a matured or unconditional right under the second factor. *United States v. Ettrick Wood Products, Inc.,* 683 F.Supp. 1262 (W.D.Wis.1988).

Under the third *Bradley* factor, the issue is whether there is the "possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Wright,* 942 F.2d 1089, 1096. The essence of the analysis under this factor is whether a defendant in conducting its affairs could reasonably have relied upon the law as it existed prior to the change. *Wright,* 492 [F.2d] at 1097 (party could not reasonably have relied upon a restrictive interpretation of prior common law in ordering financial affairs.) *Bradley,* 416 U.S. at 721 [94 S.Ct. at 2021]. (Defendant would not have conducted litigation differently had it known of its obligation to pay attorneys' fees.) Applying that analysis here, there is no indication that the increased potential for damages would have influenced the defendant's alleged discriminatory conduct in any way. *Mojica,* 779 F.Supp. at 98. Since the defendant would have done nothing differently had it been aware of the change in the law, there is no manifest injustice to retro-active application. The Court is not persuaded that any minimal reliance which may have been placed on prior law during settlement negotiations is sufficient to rise to the level of manifest injustice.

There is manifest injustice, however, when an award of punitive damages is given retro-active application in a case of this nature.

There is no manifest injustice, however, as it concerns compensatory damages, it being well known that compensatory damages for back pay would, indeed, exist prior to the Civil Rights Act of 1991. The similarity between those compensatory damages now

awarded cannot rise to the substantive level of punitive damages which are found to be inapplicable. The compensatory damages of $25,000 are affirmed and the punitive damages of $75,000 are vacated.

Accordingly,

## ORDER

IT IS ORDERED that defendant's motion for judgment as a matter of law is DENIED, as is its motion in the alternative for a new trial.

IT IS FURTHER ORDERED that punitive damages in the amount of $75,000.00 are VACATED, judgment to be amended in the amount of $25,000 and AFFIRMED in all other respects.