Marina **DOMBECK**, Plaintiff–
Appellee/Cross–Appellant,

v.

**MILWAUKEE VALVE COMPANY**,
Defendant–Appellant/Cross–
Appellee,

and

Larry L. **Carpenter**, John R. **Schmidt**,
James A. **Seder**, et al., Defendants–
Appellees.

Nos. 93–2606, 93–2718, 93–2798, 93–
3256, 93–3375 and 94–1525.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1994.

Decided Nov. 18, 1994.

Aaron N. Halstead, Lawton & Cates, Madison, WI (argued), for plaintiff-appellee.

James R. Scott, Jonathan T. Swain, Lindner & Marsack, Milwaukee, WI, Robert W. Gettleman (argued), Marc R. Jacobs, D'Ancona & Pflaum, Chicago, IL, for defendants-appellants.

Before GODBOLD,* FLAUM, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

This appeal requires that we decide what effect should be given a jury verdict rendered on a sexual harassment claim when it is later determined that the plaintiff had no right to a jury trial. Marina Dombeck maintains that her employer, the Milwaukee Valve Company ("MVC"), subjected her to a hostile work environment under Title VII of the Civil Rights Act of 1964 when one of its employees verbally and physically harassed her and MVC failed to respond adequately to her complaints. At trial, Dombeck produced substantial evidence to support her claim, and a jury found in her favor, awarding compensatory and punitive damages. To prevent the harassment from recurring, the district court enjoined MVC from assigning Dombeck and her principal harasser to the same work area, and it subsequently awarded Dombeck over $65,000.00 in attorney's fees. Unfortunately for Dombeck, while the various appeals in this case were pending, the Supreme Court decided *Landgraf v. USI Film Products*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), and held that section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, does not apply retroactively to conduct that pre-dates its enactment. *Landgraf* thus eliminates Dombeck's claims to compensatory and punitive damages and also establishes that she had no right to a jury trial. We must now decide whether, in light of the improper involvement of a jury, the injunctive relief and fee award may stand. For the reasons that follow, we vacate the district court's judgment as well as the fee awards and remand for further proceedings.

## I. BACKGROUND

MVC manufactures and sells valves, and it hired Dombeck in September 1987. The company assigned Dombeck to the assembly department in its Prairie du Sac, Wisconsin plant in February of the following year, where she remained until October 1991. During that time, Larry Carpenter was the "lead worker" in the assembly department, and he and Dombeck shared an assembly table. As a "lead worker," Carpenter was responsible for providing instructions and assignments to other workers in his area, including Dombeck. Although Dombeck and Carpenter at first were friendly, Carpenter soon began directing sexual remarks toward Dombeck. For instance, on an occasion when Dombeck asked Carpenter for a larger Allen wrench, Carpenter commented to a co-worker that "Marina want[s] the big one." Dombeck explained to Carpenter that she did not appreciate such remarks, and she then complained to John Schmidt, the department's superintendent. She repeated some of Carpenter's comments to Schmidt and told him that Carpenter was generally mean and abusive. Dombeck revealed to Schmidt, for example, that Carpenter fre-

---

* The Honorable John C. Godbold, of the Eleventh Circuit, sitting by designation.

quently addressed her as "bitch" or "fucking bitch." Yet when Dombeck asked to be transferred, Schmidt explained that she had been hired for a particular work table and that she was going to stay there.

Dombeck maintains that beginning sometime in 1990, Carpenter's verbal harassment progressed to unwelcome touching. According to Dombeck, Carpenter once approached her from the rear and slapped her on the buttocks with a sweeping motion of his arm. Dombeck told Carpenter that he had no right to touch her, and she subsequently asked Schmidt to assign her to a different work table, although she did not reveal to Schmidt that Carpenter had touched her. Dombeck's rebuke did not dissuade Carpenter, however, as he thereafter approached her from behind as Dombeck was bending down near a valve basket, placed his boot in her crotch, and wiggled it. Dombeck promptly turned around and kicked Carpenter. In tears, she again went to Schmidt and asked for a transfer.

On two occasions, once in 1990 and once in 1991, Carpenter pulled out the elastic waistband on Dombeck's slacks. During the latter incident, Carpenter looked into her slacks and told a co-worker that Dombeck was wearing her pink underwear with flowers. Because other employees were looking on, Dombeck's embarrassment reduced her to tears.[1]

Finally, in May 1991, Schmidt gave Dombeck an emergency assignment when she was working on a project for Carpenter. Pursuant to Schmidt's instructions, Dombeck put aside Carpenter's project and devoted her attention to Schmidt's more pressing assignment. When Carpenter saw this, he became hostile and pushed Dombeck in the chest. Dombeck told Carpenter not to push her, and he responded, "What? You want to tell your husband or Jerry?"[2] Dombeck again complained to Schmidt, and getting no satisfaction there, she finally went to the plant's acting manager, James Sedar. Sedar directed Schmidt to take care of the situa-

tion, but Schmidt responded by calling Dombeck into his office and angrily complaining that she had gone over his head. Dombeck explained that she had only done so because Schmidt had failed to resolve the problem after she had consistently complained.

Dombeck filed a sexual harassment charge with the Wisconsin Equal Rights Division on July 25, 1991. MVC learned of her allegations in early August, and thereafter, the environment in the assembly department grew worse, with Carpenter throwing papers and other materials around the work table and generally refusing to cooperate with Dombeck. MVC finally investigated Dombeck's charges in October 1991 and then temporarily transferred her out of the assembly department.

Dombeck cross-filed her charge with the Equal Employment Opportunity Commission, and after that agency issued her a right-to-sue letter, she commenced this suit in federal court on July 28, 1992. In resolving a summary judgment motion filed by MVC, the district court determined to apply the 1991 Civil Rights Act retroactively to Dombeck's claim, meaning that she would be permitted to present her requests for compensatory and punitive damages to a jury. The court noted, however, that because Dombeck "has now been removed from the alleged abusive environment [she] is not entitled to injunctive relief." (R. 71 at 7.)

After a three-day trial, the jury found that Dombeck had been subjected to a hostile work environment and that MVC had failed to "take reasonable remedial action after it knew or should have known" of that hostile environment. (R. 104.) The jury awarded Dombeck $25,000.00 in compensatory and $75,000.00 in punitive damages, and the district court entered judgment on the jury's verdict. Dombeck's counsel then asked the court to enjoin MVC from "ever assigning the Plaintiff to work in the same department or work area as Mr. Larry Carpenter." (April 2, 1993 Tr. at 37.) MVC's counsel responded as follows:

---

1. Dombeck maintains that Carpenter also was continually touching her neck and elbows. She perceived this touching to be of a sexual nature because of Carpenter's past conduct.

2. Jerry is Dombeck's son.

I think that what Plaintiff is seeking is an affirmative injunction, in effect. I would—if the Court chooses under Title VII to grant injunctive relief, I would suggest that that relief be tailored to prohibiting the company from discriminating against the Plaintiff in general terms rather than some type of specific limitation on where she could be transferred and when.

(*Id.* at 37–38.) The district court determined to "hear that request along with those other matters which may be brought to the Court's attention after verdict" and stated that it would "temporarily enjoin" MVC from assigning Dombeck and Carpenter to the same work area. (*Id.* at 38–39.) Thus, the court's April 5, 1993 judgment reflected both the $100,000.00 in damages awarded by the jury and the court's own order that MVC be "enjoined from assigning the defendant Larry L. Carpenter to a work area in which the plaintiff is assigned." (R. 109.)[3]

On April 12, 1993, MVC moved for judgment as a matter of law or, alternatively, for a new trial. The company first argued that the jury's finding of a hostile work environment was contrary to the evidence. The district court concluded that MVC had forfeited this argument by failing to make a motion for judgment as a matter of law at the close of all the evidence pursuant to Fed.R.Civ.P. 50(a). *Dombeck v. Milwaukee Valve Co.*, 823 F.Supp. 1475, 1476–77 (W.D.Wis.1993). Yet the court also explained that MVC could not prevail even had the issue been preserved:

> Evidence was presented that defendant Carpenter forcefully placed his foot in plaintiff's crotch and wiggled it, pulled the waistband on her pants and disclosed her undergarments on at least two occasions, slapped her on the buttocks, and pushed her in a threatening manner. Plaintiff complained to John Schmidt, her supervisor, that Carpenter had been mean to her and frequently used sexual language in her presence. The jury had every reason to accept this overwhelming evidence when determining that plaintiff was subjected to

a hostile working environment. Defendant's argument in support of its motion for judgment as a matter of law after plaintiff's presentation of evidence in the liability phase suggested counsel for plaintiff lacked sufficient familiarity with factory conditions. The jury had every reason to determine that regardless of those factory conditions which may exist, defendant could not close its eyes to that intolerable sexual harassment accorded plaintiff by Carpenter which did, indeed, reach the pervasive level of a hostile working environment.

*Id.* at 1478. The court also found the evidence sufficient to support the jury's conclusion that the company knew or should have known of the harassment and that it failed to respond with appropriate remedial measures. *Id.* at 1478–79.

In its alternative motion for a new trial, MVC maintained that the compensatory damage verdict was excessive and that the trial record did not support an award of punitive damages. Although the district court refused to disturb the compensatory damage verdict, it agreed with MVC that punitive damages were unwarranted. *Id.* at 1479–81. Alternatively, the district court believed that the 1991 Civil Rights Act's punitive damage provision should not apply retroactively to conduct occurring before its enactment. The court, however, persisted in applying the compensatory damage provision retroactively where the conduct occurred before, but the lawsuit was filed after, the Act's effective date. *Id.* at 1482–83. The court then vacated the $75,000.00 in punitive damages and on June 23, 1993, entered an amended judgment of $25,000.00 plus $5,451.00 in costs. The amended judgment reiterated that MVC was "enjoined from assigning defendant Larry L. Carpenter to a work area in which the plaintiff is assigned." (R. 127.)[4] MVC appealed from the June 23, 1993 judgment on July 14, and Dombeck cross-appealed on July 21.

---

3. In contrast to the court's comments at the April 2 hearing, the court's judgment order did not indicate that the injunctive relief was merely temporary.

4. MVC's initial post-judgment motion had not addressed the propriety of this injunction.

On July 8, 1993, MVC asked the district court to amend the June 23 judgment by vacating the injunctive relief. Although the injunctive language in the April 5 and June 23 judgments was identical, MVC apparently believed that the court had *sua sponte* made its temporary injunction permanent. The district court viewed MVC's motion as untimely but reiterated that injunctive relief was required to prevent further harassment in light of Carpenter's "former egregious conduct." (R. 137 at 5.) Recognizing that Dombeck had been "belatedly temporarily transferred by the defendant to another department where Carpenter was not employed," the court found the temporary nature of this remedial measure insufficient to prevent further discrimination. (*Id.* at 4–5.) The court therefore refused to disturb its injunctive order, and the parties filed cross-appeals from this decision.

While MVC was attempting to displace the underlying judgment, Dombeck also moved to recover her attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k). The district court disallowed a portion of Dombeck's fee request but ultimately awarded her $61,-455.00. MVC appealed the fee award on July 2, 1993. The district court subsequently awarded an additional $4,079.75 in attorney's fees incurred by Dombeck in defending against MVC's post-trial motions, and MVC again appealed. We consolidated all of these appeals and cross-appeals for oral argument and disposition.

## II. DISCUSSION

### A.

We first consider the effect of the Supreme Court's recent decision in *Landgraf.* There, the Court addressed whether section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, should receive retroactive or merely prospective application. As the Supreme Court observed, section 102 "effects a major expansion in the relief available to victims of employment discrimination." —— U.S. at ——, 114 S.Ct. at 1491. Subsection (a), for instance, permits plaintiffs to recover com-

pensatory and punitive damages for certain Title VII violations, whereas only back pay and other equitable remedies had previously been available. 42 U.S.C. § 1981a(a)(1); *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1490; *Townsend v. Indiana Univ.,* 995 F.2d 691, 692 (7th Cir.1993). Moreover, the 1991 Act grants to either party the right to demand a trial by jury if such damages are sought. 42 U.S.C. § 1981a(c)(1). Prior to the 1991 amendments, Title VII did not afford a right to a jury trial. *See Lehman v. Nakshian,* 453 U.S. 156, 164, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981). Considering the retroactivity question pre-*Landgraf,* Judge Shabaz determined to apply the compensatory damage and jury trial provisions retroactively to pre-enactment conduct but to apply the punitive damage provision prospectively only. *Dombeck,* 823 F.Supp. at 1482–83. Yet in *Landgraf,* the Supreme Court held that a Title VII plaintiff cannot recover either compensatory or punitive damages if the actionable conduct occurred before enactment of the 1991 Act. —— U.S. at ——, 114 S.Ct. at 1505–06. Such a plaintiff also is not entitled to a jury trial, the Court explained, because that right "must stand or fall with the attached damages provisions." *Id.* at ——, 114 S.Ct. at 1505.

■ *Landgraf* makes clear, then, that section 102 does not apply to Dombeck's Title VII claim, as she complains of sexual harassment that pre-dates enactment of the 1991 Civil Rights Act. We must therefore affirm the district court's decision to vacate the jury's $75,000.00 punitive damage award because Dombeck was not entitled to seek punitive damages under the law applicable to her claim. Dombeck also concedes that *Landgraf* requires us to vacate the compensatory damages awarded in the June 23, 1993 judgment, as that relief also was unavailable prior to the enactment of section 102(a). *See, e.g., Landgraf,* —— U.S. at ——, 114 S.Ct. at 1491; *United States v. Burke,* —— U.S. ——, ——, 112 S.Ct. 1867, 1873, 119 L.Ed.2d 34 (1992) (Title VII "limits available remedies to back pay, injunctions, and other equitable relief.").[5]

---

5. Compensatory damages under the 1991 Act do not include back pay. 42 U.S.C. § 1981a(b)(1).

Dombeck was not entitled to back pay in any

Thus, only the injunction prohibiting the assignment of Carpenter and Dombeck to the same work area survives *Landgraf.* MVC advances a number of reasons why this injunction too cannot stand. First, the company argues that because the injunction was based on the jury's liability findings and not on any independent findings by the court, that relief is improper under *Landgraf.* Moreover, MVC contends that the district court *sua sponte* converted the temporary injunction it entered immediately after the jury's verdict into a permanent injunction without affording MVC a hearing and without providing a statement of its reasons as required by Fed.R.Civ.P. 65(d). Finally, MVC maintains that injunctive relief is inappropriate in any event because the company had transferred Dombeck to another department long before the district court issued its injunctive order.

Putting aside the question of whether the permanent injunction was properly entered, we must determine whether that relief is invalid as a matter of law because based on a jury's liability finding where Dombeck had no right to a jury trial.[6] Relying on our decision in *Artis v. Hitachi Zosen Clearing, Inc.,* 967 F.2d 1132 (7th Cir.1992), Dombeck argues that the district court was entitled to rely on the jury's findings because, although not properly before the jury under *Landgraf,* those findings were never impugned. We do not find *Artis* controlling here.

In *Artis,* the plaintiff had alleged claims of racial discrimination under Title VII and 42 U.S.C. § 1981 relating to his employer's failure to recall him after a layoff and to train him adequately on a particular machine. 967 F.2d at 1135. The district court conducted a joint bench and jury trial with the section 1981 failure to recall claim being tried to the jury and the Title VII failure to recall and failure to train claims being tried to the court. *Id.* The jury returned a verdict for Artis on the section 1981 claim and awarded compensatory and punitive damages, yet the district court subsequently vacated that verdict, finding that an intervening decision of this court established that the plaintiff could not state a claim under section 1981 for a failure to recall. *Id.* The district court then entered judgment for the plaintiff on the failure to recall claim under Title VII, awarding reinstatement and back pay. The defendant appealed, contending that the district court could not rely on a vacated jury verdict in entering judgment for the plaintiff on a related Title VII claim. We rejected that argument under a line of this circuit's cases which hold that when section 1981 and Title VII claims are tried simultaneously, the jury's findings bind the judge with respect to factual issues common to both claims. *Id.* at 1137; *see also Mojica v. Gannett Co.,* 7 F.3d 552, 560 (7th Cir.1993) (en banc) ("under the former law the jury was allowed to make factual findings if Title VII claims were tried with section 1981 claims."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1643, 128 L.Ed.2d 363 (1994). We determined that a district court remains bound by the jury's findings even if the verdict is vacated, "so long as the underlying factfinding is not impugned." *Artis,* 967 F.2d at 1138; *see also McKnight v. General Motors Corp.,* 908 F.2d 104, 113 (7th Cir.1990), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991). Because the jury's verdict in *Artis* had been vacated on a legal ground, we found its factfinding unimpugned and therefore binding on the district court.

Dombeck contends that because the jury's liability findings here also were unimpugned, *Artis* would support a grant of injunctive relief based upon those findings. We disagree. In *Artis,* the plaintiff at least was *entitled* to jury consideration of his section 1981 claim, and we addressed the effect to be given a jury's vacated but unimpugned findings when, if not vacated, those findings would control any questions common to his Title VII claim. Yet in the instant case,

---

event because her employment was never interrupted as a result of Carpenter's harassment.

**6.** It is clear from the record that the district court never independently found a violation of Title VII, although the court's post-trial comments generally indicate its agreement with the

jury's verdict. For instance, the court found "overwhelming" evidence to support the verdict when it denied MVC's Fed.R.Civ.P. 50(b) motion for judgment as a matter of law. *Dombeck,* 823 F.Supp. at 1478–79.

there never was an entitlement to a jury on any issue. *Cf. Mojica,* 7 F.3d at 560. *Artis* does not address the effect to be given a jury's findings in these circumstances.

■ Indeed, we have found little authority on point. Wright and Miller explain that if a trial court employs a jury "because it mistakenly supposed a right to jury trial existed, and thus felt itself bound to follow the jury verdict as against its own appraisal of the evidence, such action is error," although frequently harmless error. 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2887, at 296–97 (1973). Reversal of the jury's verdict is not required in such a case if it is clear from the record that the district court would have reached the same conclusion as the jury. *Id.* at 297; *see also Hurwitz v. Hurwitz,* 136 F.2d 796, 799 (D.C.Cir.1943) ("to warrant reversal in such a case the record should show that the court using its independent judgment would have been justified in disregarding the verdict."); *Great American Ins. Co. v. Johnson,* 25 F.2d 847, 850 (4th Cir.1928); *cf. Troy v. City of Hampton,* 756 F.2d 1000, 1003 (4th Cir.) (en banc) ("[i]f only one reasonable verdict was possible from the evidence, harmless error would have strong appeal"), *cert. denied,* 474 U.S. 864, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985). Even if the evidence is not so one-sided as to completely foreclose a contrary conclusion, a new trial is not necessarily required. Instead, the case need only be remanded for factfinding by the judge independent of the jury's verdict. *See, e.g., Cargill, Inc. v. Commodity Credit Corp.,* 275 F.2d 745, 751 (2d Cir.1960) (remanding for independent factfinding where counterclaim improperly submitted to jury); *Hurwitz,* 136 F.2d at 799 ("The mandate should not be for a new trial but to require the trial court to make independent findings of fact and enter judgment in accordance with those findings."); *see also* 11 Wright & Miller, § 2887, at 297; *cf. Bailey v. Northern Indiana Pub. Serv. Co.,* 910 F.2d 406, 413–14 (7th Cir.1990) (remanding Title VII claims for district court to enter findings of fact and conclusions of

law independent of jury's findings on vacated section 1981 claim).

■ We have no doubt in the instant case that there was sufficient and perhaps overwhelming evidence to support the jury's verdict, and the district court so found in denying MVC's post-trial motion for judgment as a matter of law. *Dombeck,* 823 F.Supp. at 1478–79; *see also generally Carr v. Allison Gas Turbine Div., General Motors Corp.,* 32 F.3d 1007 (7th Cir.1994). Yet we hesitate to say that only one reasonable conclusion was possible from the evidence or that the district judge would not have been justified in disregarding the jury's verdict. For example, it is conceivable that the evidence may also support a judgment for the defendant if the district court were to discredit completely Dombeck's own testimony and to credit MVC's evidence. We thus cannot characterize the error in trying Dombeck's claim to a jury as harmless. *See Troy,* 756 F.2d at 1003; *Hurwitz,* 136 F.2d at 799; *Johnson,* 25 F.2d at 850.

■ Yet we also do not believe that the district court is required to conduct an entirely new trial below. Although as an appellate court reviewing a cold record, we are unable to make credibility determinations and to resolve existing factual disparities, the district court would not operate under the same disability, as that court heard the evidence along with the jury. The error in submitting Dombeck's Title VII claim to a jury could thus be cured by the entry of independent findings of fact and conclusions of law by the district judge. *See* Fed. R.Civ.P. 52(a); *see also Cargill,* 275 F.2d at 751; *Hurwitz,* 136 F.2d at 799. That court, however, retains the discretion to conduct any further proceedings it deems necessary to resolve Dombeck's claim, including a new trial to the bench. *See Bailey,* 910 F.2d at 413–14 (remanding for entry of findings of fact and conclusions of law on Title VII claim with option for a new trial in the district court's discretion).[7]

---

7. In finding that the district court is not required to conduct an entirely new bench trial below, we do not ignore MVC's contention that it may have tried the case differently had it known that the district court and not the jury would be the finder of fact. It of course is preferable that the parties be aware beforehand whether the court or a jury will decide their case. *See, e.g., Merex*

**238**

### B.

■ A remand for independent factual findings and a fresh judgment also should alleviate any confusion as to the nature and propriety of the injunctive relief afforded by the district court. District judges have wide discretion to issue injunctions in Title VII cases in order to fashion complete remedies and to make whole the victims of employment discrimination. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975); *EEOC v. Gurnee Inn Corp.,* 914 F.2d 815, 817 (7th Cir. 1990). Here, however, MVC argues that the district court failed to make findings to support its injunction as required by Fed. R.Civ.P. 65(d) and that it also made a temporary injunction permanent without notice to the parties. As to the lack of findings, our remand will provide the district court an opportunity to support its injunction with the appropriate Rule 65(d) findings. The remand also will permit MVC to request whatever further proceedings it deems necessary to adequately defend against the relief proposed, and this time, the company undoubtedly will understand that permanent relief is contemplated. We note, moreover, that Dombeck's request for a permanent injunction is not mooted by the fact that she and Carpenter currently are assigned to different work areas. The trial evidence indicates, as the district court found, that the current assignments are not permanent and that absent injunctive relief, MVC could alter those assignments at any time. If the district court finds that MVC subjected Dombeck to a hostile work environment in violation of Title VII, the court certainly would not abuse its discretion in issuing a similar injunction. *See Gurnee Inn,* 914 F.2d at 817 (no abuse of discretion in enjoining future harassment although employer had terminated the employment of the primary harasser); *Sprogis v. United Air Lines,* 444 F.2d 1194, 1202 (7th Cir.) (injunction not an abuse of discretion where discriminatory policy had been revoked and plaintiff had been reinstated), *cert.*

*A.G. v. Fairchild Weston Sys., Inc.,* 29 F.3d 821, 827 (2d Cir.1994). Yet in reviewing a completed trial, we hesitate to hold that the lack of such notice is inherently prejudicial, particularly

*denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971).

### C.

■ We turn finally to the issue of attorney's fees. According to MVC, this case really is about the more than $65,000.00 in attorney's fees awarded to Dombeck below as a prevailing party under 42 U.S.C. § 2000e–5(k). Dombeck's counsel conceded at oral argument that a remand is required because his client is not entitled, after *Landgraf,* to any fees relating exclusively to the damages phase of the case. MVC maintains, meanwhile, that *any* award of fees is unjustified because after more than a year of litigation, Dombeck obtained what, in its view, is only a meaningless injunction. *Cf. Farrar v. Hobby,* —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). We disagree that the injunction can so easily be dismissed as "meaningless." Yet, because we are vacating the judgment below and remanding for the entry of independent findings and a fresh judgment, we also must vacate the fee award and ask the district court to reassess Dombeck's request for attorney's fees once the court has made its findings and entered any appropriate relief.

### III. CONCLUSION

Under *Landgraf,* Dombeck was not entitled to compensatory or punitive damages for discriminatory harassment that pre-dated enactment of the 1991 Civil Rights Act. She also had no right to a jury trial of that claim. We must therefore vacate the district court's June 23, 1993 judgment and remand for further proceedings consistent with this opinion, including the entry of findings of fact and conclusions of law by the district judge. Because that court must reassess Dombeck's entitlement to attorney's fees once it has made independent findings and granted any appropriate relief, we also vacate the June 9, 1993 and March 2, 1994 judgments awarding Dombeck attorney's fees. The parties are to

where MVC has failed to articulate in anything more than a cursory fashion how its trial strategy would have differed.

bear their own costs on these appeals. Circuit Rule 36 shall not apply.

VACATED AND REMANDED.