United States Court of Appeals,

Eleventh Circuit.

No. 95-6141.

Erica Benson SPLUNGE, Sandra Calhoun, Tisha Scott, Jo Catherine
Smoot, Plaintiffs-Appellees,

v.

SHONEY'S, INC., Defendant-Appellant.

Oct. 10, 1996.

Appeal from the United States District Court for the Middle
District of Alabama. (No. CV 93-D-690-E, Ira DeMent, District
Judge.

Before EDMONDSON and DUBINA, Circuit Judges, and FARRIS[*], Senior
Circuit Judge.

EDMONDSON, Circuit Judge:

The Plaintiffs here brought Title VII actions against
Shoney's, Inc., alleging sexual harassment. The jury rendered a
verdict in favor of Plaintiffs on the hostile environment claims.
We affirm the judgment on compensatory damages but reverse the
award of punitive damages.

I. Facts and Procedural Background

Plaintiff-Appellees are female former employees of the Captain
D's restaurant in Alexander City, Alabama. The restaurant is owned
and operated by Defendant-Appellant Shoney's. The events giving
rise to this case occurred between September 1991 and May 1992.

The trial was mainly about the conduct of four Shoney's
employees: McClellan (area supervisor, with responsibility for
multiple restaurants); Johns (store manager at the plaintiffs'

[*]Honorable Jerome Farris, Senior U.S. Circuit Judge for the
Ninth Circuit, sitting by designation.

Captain D's); Webber (assistant manager); and Smith (dining room supervisor). According to the evidence, the listed employees grabbed Plaintiffs, commented extensively on their physical attributes, showed them pornographic photos and videotapes, offered them money for sex, favored other employees who had affairs with them, speculated as to the plaintiffs' sexual prowess, and so on. Shoney's does not contest here that the environment in which each plaintiff worked was hostile by Title VII standards. Instead, Shoney's contends that whatever environment existed, Shoney's, Inc. cannot be held liable in damages.

The parties stipulated that Shoney's had a sexual harassment policy in effect during the relevant period, but they disagreed on whether the policy was posted at the restaurant at which Plaintiffs worked. They also entered into stipulations agreeing that McClellan and Johns were "lower management" at Shoney's and that, before complaining to the EEOC, Plaintiffs never complained about the alleged sexual harassment to anyone higher-ranking than McClellan at Shoney's, Inc. Plaintiffs' immediate superiors were the offending employees; these superiors were obviously aware of their own misconduct. "Higher management" (starting with regional director Cort Harwood, who occasionally visited the restaurant, and extending up the corporate hierarchy) was never informed until another employee—not involved in this litigation—informed a vice-president, through a lawyer, that she too was being harassed. That VP promptly investigated the allegations brought by the employee, and his investigation resulted in the immediate termination of McClellan and Johns.

The four plaintiffs sued for sexual harassment. After the jury verdict for Plaintiffs, Defendant moved, per Rule 50, for a judgment in Defendant's favor. The district court denied the motion. Defendant asserts the district court erred in concluding that Shoney's had sufficient notice (actual or constructive) of the hostile environment to which Plaintiffs were subjected; because Shoney's had no such knowledge, the argument goes, it cannot be held liable in compensatory damages. Defendant also contends that Shoney's did not act with the level of malice or reckless disregard for Plaintiffs' rights necessary to sustain the punitive damages award under the Civil Rights Act of 1991.

II. Discussion

## A. Compensatory Damages

The Supreme Court announced in *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), that sexual harassment could arise in two ways: by *quid pro quo* propositions by superiors acting under color of their corporate authority, or by the creation of a hostile environment by superiors or coworkers. Holding the company strictly liable for the acts of its employees "is illogical in a pure hostile environment setting" because there, "the supervisor acts outside the scope of actual or apparent authority to hire, fire, discipline, or promote." *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1316 (11th Cir.1989). Therefore, hostile environment liability on the part of an employer exists only where "the corporate defendant knew *or should have known* of the harassment and failed to take prompt remedial action against the supervisor." *Id.* (emphasis added).

Here, McClellan, Johns, Smith, and Webber doubtlessly knew of the hostile environment; and no contention is made that any manager higher up than these people actually knew of the hostile environment. The issue is thus whether the notice to the corporation required by *Steele* existed where all the supervisors with whom Plaintiffs had regular contact were offenders and where the company failed (by not posting the sexual harassment policy) to provide Plaintiffs with guidance on how to contact upper-level managers.

The jury verdict holding Shoney's liable will be upheld because there was sufficient evidence that Shoney's (through its "higher management") had at least constructive notice of the hostile environment. *See Henson v. City of Dundee,* 682 F.2d 897, 905 (11th Cir.1982) ("The employee can demonstrate that the employer knew of the harassment by showing that she complained to higher management of the harassment, or by showing the pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive knowledge.") (citations omitted).

The hostile environment in this case was so pervasive and managers at the restaurant were so inextricably intertwined in this environment that higher management could be deemed by a jury to have constructive knowledge. So, the district court did not err on the question of compensatory damages. The evidence here of harassment is extremely extensive, and that so many employees were involved indicates that the events at Captain D's were not cloaked in secrecy. Therefore, the district court's conclusion that the evidence was enough to show that Shoney's higher management had

constructive knowledge was not error. *See generally Reich v. Department of Conservation and Natural Resources,* 28 F.3d 1076, 1082 (11th Cir.1994) (reviewing question of constructive knowledge as question of fact "for clear error").

And, Shoney's cannot complain about its lack of notice: a reasonable jury could find that Shoney's sexual harassment policy was never communicated to Plaintiffs. The Supreme Court stated in *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), that "Petitioner's contention that respondent's failure [to complain to higher management] should insulate it from liability might be substantially stronger if its procedures were better calculated to encourage victims of harassment to come forward." *See also Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1560 (11th Cir.1987) (noting that under *Meritor,* employer may shield itself from liability only by "enacting an explicit policy against sexual harassment *and an effective grievance procedure* ") (emphasis added). Thus, the award of compensatory damages stands.

### B. Punitive Damages

Defendant argues that even if Shoney's had constructive knowledge of the hostile environment, the constructive knowledge still does not satisfy the requirement of the Civil Rights Act of 1991 that, before Plaintiffs can collect punitive damages from the company, they must show the company acted with malice or reckless indifference to Plaintiffs' federal rights.[1] The district judge

---

[1]Under the Civil Rights Act of 1991, 42 U.S.C. § 1981a, punitive damages are available where "the complaining party demonstrates" that the employer "engaged in ... discriminatory

rejected this argument of Defendant.  But, we conclude that not enough evidence supports the determination that Shoney's acted with malice or reckless indifference to Plaintiffs' federally protected rights;  and so we reverse the award of punitive damages.

The record fails to show, first, that no member of Shoney's management higher up the corporate hierarchy than the harassing employees themselves acted with the state of mind required by section 1981a.  The plain language of section 1981a, which refers to malicious or reckless acts, compels the conclusion that Shoney's mere "constructive knowledge" of the harassment cannot support punitive damages.

One court has defined malice, for section 1981a purposes, as meaning "with an intent to harm," and recklessness as "with serious disregard for the consequences of [one's] actions." *Canada v. Boyd Group, Inc.,* 809 F.Supp. 771, 781 (D.Nev.1992).  We accept these definitions and conclude that they do not reach the employer with only constructive knowledge, at least when that constructive knowledge flows from negligence, as opposed to willful blindness. As one court has written:

> [A]lthough the defendant should have had knowledge of the pervasive hostile working environment which existed, nonetheless, it cannot be said that its failure to act earlier was in any way a reckless or callous disregard of or indifference to the rights of plaintiff Marina Dombeck or other persons.  It was a *negligent* failure to conduct a more extensive investigation and to provide for earlier remedial measures which would have eliminated the hostile environment.

*Dombeck v. Milwaukee Valve Co.,* 823 F.Supp. 1475, 1480

---

practices with *malice or with reckless indifference* to the federally protected rights of an aggrieved individual." (Emphasis added.)  This restriction does not apply to the recovery of compensatory damages.

(W.D.Wis.1993) (declining to assess punitive damages against employer) (emphasis added.) *Dombeck* was vacated on the ground that the Civil Rights Act of 1991 should not have been applied retroactively, but its reasoning has continued merit. Therefore, considering the plain language of the statute and the limited case law, we conclude that, at least ordinarily, constructive knowledge alone is insufficient to authorize the award of punitive damages under section 1981a.

Here, Shoney's had "constructive knowledge" of the hostile environment only because it failed to exercise a reasonable level of vigilance. No evidence shows Shoney's failed to become aware of the hostile environment because of any established policy of willful blindness; Shoney's had a general policy against sexual harassment and did investigate the complaints it received. Therefore, we decline to hold that Shoney's constructive knowledge of the acts of its employees renders it liable in punitive damages under the Civil Rights Act of 1991.

And, we also decline to hold that, in the instant circumstances, the state of mind of the harassing employees counts as the state of mind of Shoney's, the corporate employer, for punitive damages purposes. This decision is consistent with those of other courts who have overturned a punitive damages award imposed on an employer for the hostile environment created by an employee, when that employee's acts were not authorized or approved, implicitly or explicitly, by the company.

For example, in *Patterson v. PHP Healthcare Corp.,* 90 F.3d 927, 943 (5th Cir.1996), the Fifth Circuit decided that the

harassing employee's "actions may be attributed to PHP Healthcare for purposes of compensatory damages, given his supervisory role as project manager." *Id.* Still, the court concluded that punitive damages could not be assessed against the company. The Fifth Circuit announced that it reached this conclusion because the company did nothing to countenance or approve the harassment:

> All of the discriminatory acts in this case were solely acts of Kennedy [the harassing employee]. Kennedy was not a corporate officer of PHP Healthcare but was the "project manager".... The record is completely void of evidence showing that [PHP] took part in any discriminatory conduct much less any "malicious" or "reckless" conduct. The existence of the employment handbook setting forth a policy of non-discrimination is at least prima facie evidence of awareness on the part of [PHP] of the federally protected rights of [the plaintiffs]; and there is nothing in this record which purports to show that [PHP] took any action which was inconsistent with that policy. Similarly, there is nothing [to] show that [PHP] had knowledge of Kennedy's malicious or reckless conduct, or authorized, ratified, or approved Kennedy's actions.

*Id.* at 943; *see also Dombeck,* 823 F.Supp. at 1480. The same can be said for this case.[2] Here, we conclude that Plaintiffs failed

---

[2]Some acknowledgment for the conclusion that the harassing employees' state of mind is not Shoney's state of mind is provided by the stipulation entered into by Plaintiffs before trial. There, Plaintiffs agreed, as later recalled in court by the district judge, that "Mr. Johns and Mr. McClellan [the higher-ranking of the harassing employees] were both lower management for Shoney's." Plaintiffs suggest this stipulation should be ignored "to insure there is a just result." We note, however, that stipulations are not to be disregarded lightly. *See Laird v. Air Carrier Engine Service, Inc.,* 263 F.2d 948, 953 (5th Cir.1959) ("Those statements or agreements which dispense with proof of facts are made with respect to the impending trial and until withdrawn are not merely evidence as in the case of an ordinary admission. They are absolutely binding. As long as they stand, they foreclose the matter altogether."). Stipulations to pure questions of law are of course not binding on courts. *See Noel Shows, Inc. v. United States,* 721 F.2d 327, 330 (11th Cir.1983). The stipulation here may involve a mixed question of law and fact. But to the extent the stipulation constitutes a representation of fact on the named employees' roles in the Shoney's management structure—we believe that is the

to show that Shoney's acted with the state of mind required for the imposition of punitive damages under section 1981a.

The decision of the district court is AFFIRMED in part and REVERSED in part.

---

substance of it—that representation is not to be disregarded lightly.