**Mellissa Rae SULLIVAN, Plaintiff,**

v.

**LAKE REGION YACHT AND COUNTRY CLUB, INC., a Florida corporation, Defendant.**

No. 97–1464–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

March 18, 1998.

Patricia Ann Doherty, Wooten, Honeywell & Kest, P.A., Orlando, FL, for Plaintiff.

John W. Campbell, Michael Dennis Malfitano, Michael P. Winter, Malfitano Campbell & Dickinson, Tampa, FL, J. Rodney Runyons, Murphy & Associates, Clearwater, FL, for Defendant.

## *ORDER*

KOVACHEVICH, Chief Judge.

This cause comes before the Court on Defendant's Motion for Summary Judgment

(Docket No. 34), Memorandum in support thereof (Docket No. 35), and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Docket No. 49).

In its motion, Defendant asserts that summary judgment is appropriate as to Plaintiff's claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., ("Title VII"), the Florida Civil Rights Act ("FCRA"), Fla.Stat. Ch. 760, and Florida's common law for negligent retention. The Court has already addressed Plaintiff's negligent retention claim in the Order disposing of Plaintiff's motion for summary judgment. Therefore, it will not be addressed here. In addition, in said Order, the Court examined Defendant's argument that Plaintiff is time-barred by failing to bring a civil action after receipt of the Notice of Right to Sue. Consequently, that issue will not be reconsidered here. The central issues to be resolved in the instant motion are whether Plaintiff has made a sufficient showing to avoid summary judgment as to her hostile work environment and *quid pro quo* sexual harassment claims.

**Standard of Review**

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact, when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant,* 595 F.2d 994, 995–97 (5th Cir.1979), (quoting *Gross v. Southern Railroad Co.,* 414 F.2d 292 (5th Cir.1969)). Material factual disputes preclude summary judgment.

The United States Supreme Court, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), held:

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* 477 U.S. at 322. Moreover, the Court stated, "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Id.* at 324.

As the district court in *Coghlan v. H.J. Heinz Co.,* 851 F.Supp. 808 (N.D.Tex.1994), summarized:

Although a court must "review the facts drawing all inferences most favorable to the party opposing the motion," ... the nonmovant may not rest on mere allegations or denials in its pleadings; in short, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment ... The existence of a mere scintilla of evidence will not suffice ...

*Id.* at 810–11 (citations omitted). Issues of fact are " 'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**Discussion**

*I. Hostile Work Environment*

In order to establish a *prima facie* case of hostile work environment sexual harassment, Plaintiff must prove: (1) that she belongs to the protected group; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment complained of was based on sex; and (4) that the harassment complained of affected a term, condition, or privilege of employment in that it was sufficiently severe or pervasive to alter conditions of her employment and create an abusive working environment. *See Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557 (11th Cir. 1987). Importantly, where the alleged harasser is the victim's supervisor but not her

"employer," an employer is only liable for sexual harassment by one of its supervisors, under a theory of *respondeat superior. Id.* "Consequently, the plaintiff cannot prevail unless she can show that her employer 'knew or should have known of the harassment in question and failed to take prompt remedial action.'" *Id.* (quoting *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982)).

■ Plaintiff argues that if an employee's psychological well being at the work place is affected, it is sufficient (but not required) to meet the requirement of alteration of the condition of employment. *See Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982); *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir.1995). "Whether sexual harassment at the workplace is sufficiently severe and persistent to affect seriously the psychological well being of employees is a question to be determined with regard to the totality of the circumstances." *Henson* at 904 (citations omitted).

In determining whether an environment is "hostile" or "abusive" the Court must consider: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating or merely an offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *See Carter v. Barnett Bank of Manatee County,* 11 Fla.L. Weekly Fed.D. 354 (M.D.Fla.1997); *Harris* at 372.

■ Plaintiff alleges that during the course of her employment with Defendant, her supervisor, Alfonso Ellis, made comments to Plaintiff to the effect that he would "like to see [Plaintiff] walk up the stairs" and that he "liked her tight buns." Plaintiff claims that whenever she had to walk up the stairs at work to bring supplies to a party, Mr. Ellis would find a reason to walk up behind her and typically made comments about her "tight buns." According to Plaintiff, Mr. Ellis would tell her that he wanted to touch her private parts and asked her whether she "wanted to see where the Shetland Pony bit [him]," while he would look down at his crotch. In addition, Plaintiff claims that Mr. Ellis touched her backside and tried to get Plaintiff to look at his crotch "to see how excited he was." Plaintiff asserts that Mr. Ellis made a comment as Plaintiff was coming out of the rest room that he "just missed it," and on another occasion, Mr. Ellis referred to his penis as the "black pony."

Furthermore, Plaintiff maintains that Mr. Ellis made repeated phone calls to her at home and he would ask Plaintiff out on dates and make vulgar statements. Although Plaintiff admits that the calls would be partially work related, Plaintiff asserts that the calls would typically involve requests to go out on dates or some sexually related comment or joke. Finally, Plaintiff argues that, "[t]he harassment culminated in a telephone conversation in which Ellis told the plaintiff he would have to write her up to make it look good in front of the other servers." However, Plaintiff stated in her deposition that she was not sure what Mr. Ellis meant by this statement, but presumably, it had to do with her co-worker's impression that Mr. Ellis gave Plaintiff special attention. However, in a statement given to the police after Plaintiff quit, Plaintiff stated that Mr. Ellis said he wanted to see Plaintiff after work because he was going to have to write her up "because of an incident on Tuesday."[1] However, Mr. Ellis testified that he called Plaintiff and told her he was going to have to write her up because Plaintiff did not show up for work on one of her scheduled days and did not inform anyone that she was not going to come in that day. It is unclear whether there was a legitimate "incident" which took place that Mr. Ellis was seeking to address with Plaintiff or whether Mr. Ellis was making an effort to conceal his feelings towards Plaintiff.

Plaintiff's allegations of Mr. Ellis' touching and following Plaintiff upstairs, in addition to making crude remarks and gestures, depicts

---

1. Apparently, Plaintiff called the police because she was afraid that Mr. Ellis would continue to harass her after she quit.

a hostile working environment. However, Plaintiff concedes that she never told Mr. Ellis to stop nor told him that anything he did offended her. Also, it appears that Mr. Ellis only touched Plaintiff on one occasion. Plaintiff asserts that Mr. Ellis called her somewhere between ten (10) and fifty (50) times, but she does not recall whether they all involved inappropriate conversations. In addition, Plaintiff testified that Mr. Ellis never gave her a reason to believe that he would hurt Plaintiff physically. Nevertheless, assuming *arguendo* that Plaintiff's allegations are true, Mr. Ellis' conduct unreasonably interfered with Plaintiff's work performance.

Plaintiff asserts that she was afraid of Mr. Ellis and afraid of losing her job. Plaintiff also asserts that Mr. Ellis made her feel uncomfortable at work because of his comments, following her up the stairs, and constantly looking in her direction. Plaintiff claims that she was scared that Mr. Ellis would cut back on the hours Plaintiff was given to work or fire her if she reported his alleged conduct to any of Mr. Ellis' supervisors or the Equal Employment Opportunity Commission ("EEOC"). In addition, Plaintiff asserts that she was afraid to work on the day she resigned because Mr. Ellis wanted to see her after work to "write her up." Plaintiff claims that she does not recall an incident that would warrant being written up and Mr. Ellis' sexual comments and constant pursuit caused her to become concerned. Certainly, Plaintiff has made a sufficient showing to preclude summary judgment on the issue of whether Mr. Ellis' alleged behavior created a hostile work environment.

■ Although Mr. Ellis' behavior was severe and pervasive enough to create a hostile or abusive work environment, there is no support for the contention that the harassment was severe and pervasive enough to impute knowledge to Defendant. "The ques-

tion of notice to the employer is distinct from the question of the environment's abusiveness." *See Faragher v. City of Boca Raton,* 111 F.3d 1530, 1538 (11th Cir.1997).

## II. Agency

Defendant contends that Plaintiff is unable to show that Defendant is liable for Mr. Ellis' alleged behavior. Defendant argues that it did not have actual notice of any alleged harassment because Plaintiff never reported Mr. Ellis' alleged conduct to anyone. Plaintiff admitted in her deposition that she did not report the alleged harassment to any supervisor or to any other person working for Defendant, other than a fellow server. Furthermore, Plaintiff explained that there was never anyone else around when Mr. Ellis allegedly made the various comments. In her deposition, Plaintiff explained that she is not aware that any of Defendant's personnel ever overheard or observed any alleged harassing conduct by Mr. Ellis, other than a fellow server.

The Eleventh Circuit has explained that an employer can be either directly or indirectly liable for its employee's sexual harassment of another employee. Direct liability lies when the employer "knew, or upon reasonably diligent inquiry should have known, of the harassment and failed to take immediate and appropriate corrective action." *Faragher* at 1535. Moreover, Plaintiff can prove an employer's knowledge of sexual harassment by showing that "the harassment was pervasive enough to charge the employer with constructive knowledge." *Id.* at 1539.

### A. Hostile Work Environment–Indirect Liability

■ On the other hand, under a hostile environment theory, the employer can be held indirectly liable [2]: (1) when a harasser is

2. The case law is not consistent concerning the designation of indirect or direct liability. In *Faragher*, the Eleventh Circuit stated that an employer can be held indirectly liable if the harassment occurs within the scope of the supervisor's employment or the agency relationship aides the supervisor's ability or opportunity to harass his subordinates. In *Sparks,* the Eleventh Circuit explained that because the acts of an employer's agents are those of the employer, an employer is

directly, rather than, indirectly liable. Moreover, the *Sparks* Court explained that direct liability encompasses the supervisor's actions where the supervisor exercises the authority actually delegated to him by the employer. In *Faragher,* the Court explained that the employer could be directly liable where it knew or should have known about the harassment. However, in *Sparks,* the Court explains that under a direct liability theory, the supervisor's acts are viewed as those of

acting within the scope of his employment in perpetrating the harassment; or (2) when a harasser is acting outside the scope of his employment, but is aided in accomplishing the harassment by the existence of the agency relationship. *See Faragher* at 1536.

Plaintiff primarily relies on an indirect liability theory and contends that, although Mr. Ellis was acting outside the scope of his employment, "he was clearly aided in accomplishing his harassment by the existence of his agency relationship to the defendant, Country Club." Plaintiff argues that Mr. Ellis' management capacity enabled him to come into repeated contact with Plaintiff. Plaintiff asserts that Mr. Ellis' position entitled him to walk freely throughout the country club. Plaintiff argues that, as a result of Mr. Ellis employment with Defendant, Mr. Ellis had access to Plaintiff's phone number, work schedule, and had business excuses to call Plaintiff at home. In addition, Plaintiff points out that Mr. Ellis' management status allowed him access to secluded areas such as the rest room.

Plaintiff's arguments are unpersuasive. When the harasser acts outside of the scope of employment, the employer is only liable if the harassment is accomplished by an instrumentality of the agency or through conduct associated with the agency status. *See Faragher v. City of Boca Raton,* 111 F.3d 1530, 1536 (11th Cir.1997). For example, where the harasser used the authority delegated to him by the company to assist in the harassment, the employer would be liable. *Id; See also Sparks v. Pilot Freight Carriers,* 830 F.2d 1554, 1560 (11th Cir.1987). However, the Eleventh Circuit explained that, "[i]n one sense, a supervisor is always aided in accomplishing hostile environment sexual harassment by the existence of an agency relationship with his employer because his responsibilities include close proximity to and regular contact with the victim." *Faragher v. City of Boca Raton,* 111 F.3d 1530, 1537 (11th Cir.1997). The Court of Appeals noted that the common law does not use "aided" in such a broad sense. *Id.*

In *Faragher,* the Eleventh Circuit cited to *Gary v. Long,* 59 F.3d 1391, 1397 (D.C.Cir.), *cert. denied* 516 U.S. 1011, 116 S.Ct. 569, 133 L.Ed.2d 493 (1995), to explain the meaning of "conduct associated with the agency status." In *Long,* the court used an example provided in the Restatement (Second) of Agency § 219 and explained that, "[l]iability is based upon the fact that the agent's position facilitates the consummation of the [tort], in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of business confided to him." 111 F.3d at 1537 n. 8. Plaintiff could not have believed that Mr. Ellis was acting within the color of his authority. The Eleventh Circuit emphasized this guiding agency principle by explaining that, in *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554 (11th Cir.1987), the supervisor used the authority delegated to him by the employer to harass the plaintiff by repeatedly reminding the plaintiff that he could fire her if she refused his advances. 111 F.3d at 1537. Significantly, *Sparks* has been limited to situations involving both *quid pro quo* and hostile environment harassment.

Plaintiff's argument that Defendant is liable because Mr. Ellis had access to Plaintiff and her personal information as a result of working for Defendant, attempts to impose strict liability on the employer. As the Eleventh Circuit aptly stated:

A supervisor or other employee typically does not act as the company when he subjects an employee to a hostile work environment. Hence the distinction between liability for quid pro quo harassment and liability for hostile work environment harassment: Strict liability is illogical in a pure hostile environment setting. In a hostile environment case, no quid pro quo exists. The supervisor does not act as the company; the supervisor acts outside "the scope of actual or apparent authority to hire, fire, discipline, or promote." Corporate liability, therefore, exists only through respondeat superior; liability exists only where the corporate defendant knew or

the employer; "[t]herefore, there is no reason to have a notice requirement because the supervisory employee is deemed to be the employer itself

and thus notice to the supervisor that he is engaging in unwelcomed harassment is notice to the employer." *Sparks* at 1560 n. 10.

should have known of the harassment and failed to take prompt remedial action against the supervisor.

*Faragher v. City of Boca Raton,* 76 F.3d 1155, 1164 (11th Cir.1996). Mr. Ellis' alleged conduct is a prime example of an employee stepping outside of his scope of employment to further his own personal ends.

Consequently, the Court finds that Mr. Ellis' access to Plaintiff, as a result of working for Defendant, standing alone, is insufficient to impose indirect liability on Defendant. Plaintiff has failed to cite a case which holds that an employer is indirectly liable for its employee by virtue of the employee's responsibilities which include close proximity to and regular contact with the victim. Plaintiff's arguments incorrectly imply that strict liability is proper under a hostile work environment theory. In order to determine whether Defendant can be held directly liable, the Court must analyze Plaintiff's *quid pro quo* harassment claim and whether Mr. Ellis was acting as Defendant's agent.

### B. *Quid Pro Quo—Direct Liability*

"An employer may not require sexual consideration from an employee as a *quid pro quo* for job benefits." *Henson v. City of Dundee,* 682 F.2d 897, 908 (11th Cir.1982). *Quid pro quo* harassment differs from a hostile work environment theory in that, the acceptance or rejection of the harassment by the employee must be an express or implied condition to the receipt of a job benefit or the cause of a tangible job detriment. *See Id.* at 909. "As in the typical disparate treatment case, the employee must prove that she was deprived of a job benefit which she otherwise was qualified to receive because of the employer's use of a prohibited criterion in making the employment decision." *Id.*

▇ Defendant argues that Plaintiff cannot prevail on a claim for *quid pro quo* sexual harassment because she cannot establish that terms or conditions of her employment were conditioned upon sexual advances. Defendant asserts that Plaintiff has not alleged that Mr. Ellis requested sexual favors as *quid pro quo* for job benefits. However, in her complaint, Plaintiff alleged that Mr. Ellis, as clubhouse Manager of Defendant,

made statements that were intended and understood by Plaintiff to mean that submission to or rejection of unwelcome sexual conduct by Plaintiff would be used as a basis for employment decisions, and that Mr. Ellis told Plaintiff that indulgence in a dating situation would prevent a hostile work environment. Nevertheless, Plaintiff has not provided evidence which would support this assertion. Mere conclusory allegations are not sufficient to survive a summary judgment motion.

Plaintiff relies on Mr. Ellis' alleged harassing antics to support her claim. Plaintiff does not provide evidence which would permit an inference that Mr. Ellis actually or impliedly conveyed to her that her employment was conditioned upon acceptance of his alleged sexual advances. *Quid pro quo* sexual harassment exists where the victim's response to unwelcome sexual advances affects tangible aspects of her compensation, terms, conditions, or privileges of employment. *See Chamberlin v. 101 Realty, Inc.,* 915 F.2d 777, 783 (1st Cir.1990).

The only allegation made by Plaintiff which deserves examination is her statement that, "Mr. Ellis told [Plaintiff] that he was going to have to write her up so that the other servers would not get suspicious." However, Plaintiff admitted that she did not know what Mr. Ellis meant by this statement. Furthermore, the first few times Plaintiff related to anyone that Mr. Ellis had made this statement, she stated that Mr. Ellis said he was going to have write up Plaintiff "because of an incident on Tuesday." Moreover, Mr. Ellis allegedly made this statement less than a week prior to Plaintiff's resignation date and it has no relation to Plaintiff's refusal to submit in any alleged sexual blackmail.

Plaintiff testified that when Mr. Ellis would call her, she would hang up on him whenever he made any offensive comment. There is no indication that Plaintiff ever accepted Mr. Ellis' alleged sexual advances; therefore, Plaintiff is expected to at least provide the Court with one example or an inference of a tangible job detriment as the result of her rejections. Moreover, Plaintiff has not supported her allegation that Mr.

Ellis conditioned an employment decision on Plaintiff's reaction to any alleged conduct. Plaintiff merely argues that, "[s]he was aware that he was in charge of the servers, had the authority to hire and fire and discipline. He made it known to her that he had the authority to write her up." Clearly, if Mr. Ellis was Plaintiff's supervisor, she was "aware that he was in charge of the servers." Plaintiff's arguments require a leap in logic the Court is not willing to take. The Court is not persuaded by the fact that "[Mr. Ellis] made it known to her that he had the authority to write her up." Mr. Ellis should not have had to "make it known to her that he had the authority to write her up," she should have been able to discern that on her own. Significantly, Plaintiff has *not* alleged, nor provided any evidence to permit an inference, that Mr. Ellis made it known to her that he had authority to write her up **and he threatened to use his authority if Plaintiff did not accept his sexual advances.**

Plaintiff argues that "[b]ased on the nature of Ellis' actions and the nature of his managerial relationship to Ms. Sullivan, his free access to the country club facilities and the statement of authority made to Ms. Sullivan, Ellis' authority granted to him by the defendant was clearly used to further his actions." This statement highlights Plaintiff's entire *quid pro quo* argument: Mr. Ellis was Defendant's manager; therefore, Defendant is strictly liable. This is incorrect. Conspicuously absent from Plaintiff's allegations is any evidence tending to prove that the acceptance or rejection of the harassment by the employee was an express or implied condition to the receipt of a job benefit or the cause of a tangible job detriment.

The Court finds that Plaintiff's failure to show that Mr. Ellis demanded her acquiescence to his alleged sexual overtures in exchange for tangible job benefits is fatal to her *quid pro quo* sexual harassment theory. *See Farley v. American Cast Iron Pipe Co.,* 115 F.3d 1548 (11th Cir.1997). Plaintiff's allegations do not involve any promises or threats related to any aspect of Plaintiff's job which can be fairly interpreted as *quid pro quo* harassment. As a result, this case is a pure hostile environment case and "[c]orpo-

rate liability, therefore, exists only through respondeat superior; liability exists only where the corporate defendant knew or should have known of the harassment and failed to take prompt remedial action against the supervisor." *See Faragher v. City of Boca Raton,* 76 F.3d 1155, 1164 (11th Cir. 1996). In order for Plaintiff's sexual harassment claims against Defendant to remain, Plaintiff must demonstrate that Defendant knew or should have known of Mr. Ellis' harassment and failed to take prompt action.

## C. *Hostile Work Environment—Direct Liability*

■ As stated above, direct liability lies when the employer "knew, or upon reasonably diligent inquiry should have known, of the harassment and failed to take immediate and appropriate corrective action." *See Faragher v. City of Boca Raton,* 111 F.3d 1530, 1535 (11th Cir.1997). Furthermore, Plaintiff can prove an employer's knowledge of sexual harassment by showing that "the harassment was pervasive enough to charge the employer with constructive knowledge." *See Faragher* at 1539.

Significantly, Plaintiff never reported the alleged conduct to anyone other than one of her co-workers who had no authority to investigate the allegations and was not expected to report the conduct on Plaintiff's behalf. Plaintiff claims that she was concerned that she would lose her job if she reported Mr. Ellis. However, Plaintiff quit rather than inform Mr. Ellis' supervisor. Plaintiff's rationalization is inconsistent at best. Plaintiff admits that she spoke with Michael Fiddelke, Defendant's General Manager, on more than ten (10) occasions during the relevant time period generally concerning her new job, but never mentioned anything about Mr. Ellis' behavior. Nevertheless, Plaintiff also asserts that she was scared to report Mr. Ellis' behavior because he knew where she lived. Plaintiff explains that she felt that it was safe to report Mr. Ellis after she quit because he would not know when she was home. Moreover, Plaintiff maintains that she felt safer after quitting because she had filed a police report.

Plaintiff argues that the factors to consider in determining whether an employer should have known of the harassment include: (1) the pervasiveness of the harassment; (2) the level of the harasser's position in the corporate hierarchy; and (3) whether the employer provides complaint procedures for it's employees to report harassment. Plaintiff argues that, "... with the small physical size of the country club, the presence of both the General Manager, Michael Fiddelke, the harasser, Clubhouse Manager, Alfonso Ellis and the Dining Room Manager, Mark Tocci, in the dining and serving areas, throughout the day, it is reasonable to assume the managers should have [had] knowledge of Ellis' inappropriate conduct towards, Sullivan." Plaintiff reiterates Mr. Ellis' alleged comments and the fact that he followed Plaintiff up the stairs and asserts that, "[m]ost of the above conduct occurred at the Country Club. Not only a small location, but in a location where the three management representatives had offices and were frequently present and in locations close to the management offices. The actions were there to be seen and should have been recognized." Plaintiff's Memorandum in Opposition, p. 15 (citations omitted).

Plaintiff continues her argument by asserting that Mr. Ellis was a high level superior. In addition, Plaintiff argues that, "[i]f a manager acts as plaintiff's employer then the sexual harassment plaintiff is not required to demonstrate the employer's liability for the supervisor's alleged actions." Plaintiff cites *Sparks* for this proposition. Plaintiff incorrectly combines an argument that Mr. Ellis was acting as Defendant's "agent," ie., where the supervisor exercises the authority actually delegated to him by his employer, by making or threatening to make decisions affecting the employment status of his subordinates, with an argument that the employer had knowledge. The Court has already explained that the instant case does not involve a situation where the employer is directly liable for its supervisor's violations of Title VII because those acts are viewed as acts of the employer itself.

Plaintiff's argument that, "it is reasonable to assume the superior is aware of his own misconduct and the corporation is presumed to have knowledge and therefore notice of harassment," is misplaced. The Court agrees that in a case like *Sparks,* there is no reason to have a notice requirement because the supervisory employee is deemed to be the employer itself. However, in the instant case, Mr. Ellis was not acting as Defendant's "agent" and Defendant is entitled to notice in order to have the opportunity to take "prompt remedial action." *See Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1316 ,n. 1 (11th Cir.1989). The cases cited by Plaintiff, *Karibian v. Columbia University,* 14 F.3d 773 (2nd Cir.1994), and *Splunge v. Shoneys,* Inc., 97 F.3d 488 (11th Cir.1996), are distinguishable from the case at hand.

In *Karibian,* the court held that, "an employer is liable for the discriminatorily abusive work environment created by a supervisor if the supervisor uses his actual or apparent authority to further the harassment, or if he was otherwise aided in accomplishing the harassment by the existence of the agency relationship." 14 F.3d at 780. The court noted that this was the first occasion it had to address "the proper standard of employer liability where, as here, the plaintiff's supervisor created a discriminatorily abusive work environment **through the use of his delegated authority.**" *Id.* (emphasis added). In the case at hand, Plaintiff is not able to establish that Mr. Ellis capitalized upon his authority over Plaintiff's employment. Moreover, in *Karibian,* the court emphasized that its conclusion to hold the employer liable absent notice, follows naturally from its earlier conclusion that Plaintiff stated a valid claim for *quid pro quo* harassment. *Id.* Conversely, in the case at hand, Plaintiff has failed to establish a prima facie case of *quid pro quo* harassment.

In *Splunge,* the employees alleged sexual harassment connected with their employment at a restaurant owned by Defendant. In that case, Defendant's area supervisor, store manager, assistant manager, and dining room manager "doubtlessly knew of the hostile environment." 97 F.3d at 489–90. The court specifically stated that the issue was whether the notice to the corporation required by

*Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311 (11th Cir.1989), existed where all the supervisors with whom the plaintiffs had contact were offenders and where the company failed to provide the plaintiffs with guidance on how to contact upper-level managers. *Id.* at 490. The court explained that the "hostile environment in this case was so pervasive and managers at the restaurant were so inextricably intertwined in this environment that higher management could be deemed by a jury to have constructive knowledge." *Splunge* is obviously distinguishable from the case at hand.

It is clear that Defendant in the instant case can only be liable if it knew or should have known of Mr. Ellis' alleged actions and failed to take prompt remedial action. "Liability attaches to a corporate defendant in a pure hostile environment case through *respondeat superior.*" *Steele* at 1317. Plaintiff cannot establish that Mr. Ellis' alleged conduct was so open and notorious as to put Defendant on notice. A great deal of the alleged harassment took place over the telephone which is contrary to Plaintiff's contention that "[t]he actions were there to be seen and should have been recognized." Moreover, Plaintiff testified that when Mr. Ellis followed her up the stairs he was legitimately going upstairs in order to supervise party preparations. Although Plaintiff contends that Mr. Ellis' "legitimate" reasons for going upstairs merely provided him with an excuse to follow her, certainly the other managers cannot be charged with constructive knowledge when Plaintiff never alleged that it was obvious to the other managers from this conduct that Mr. Ellis was harassing her. Furthermore, Plaintiff testified that no one was present on the one occasion when Mr. Ellis allegedly patted her on her behind.

Plaintiff concedes that the alleged conduct and comments took place outside of the presence of the other employees. There is no evidence to support Plaintiff's contention that Defendant knew or should have known about Mr. Ellis' alleged behavior. There is no evidence that any of the other managers even suspected that Plaintiff was being harassed. The alleged harassment in this case was essentially private and Plaintiff never told anyone other than a fellow server about Mr. Ellis, even though she discussed other work issues with Mr. Fiddelke on several occasions. Plaintiff has failed to establish that Defendant had actual or constructive notice.

*Conclusion*

Defendant would have been held strictly liable under a *quid pro quo* harassment theory because the supervisor is deemed to act as the company. However, Plaintiff failed to provide evidence to support her claim for *quid pro quo* sexual harassment. Mr. Ellis was not acting as an agent for Defendant and never required *quid pro quo* benefits for job benefits. As a result, Plaintiff's claim is grounded in a pure hostile environment setting. Defendant can only be liable if it knew or should have known of Mr. Ellis' alleged actions and failed to take remedial actions. Plaintiff has failed to provide the Court with any evidence which could support an inference that Defendant had actual or constructive knowledge. The fact that the country club was not very big and other managers worked in the area is not sufficient. Plaintiff was only employed with Defendant from November, 1994, through March 10, 1995. Plaintiff never informed anyone with authority about Mr. Ellis until after she voluntarily resigned. This case provides a prime example of the limitations on the employers liability. There are no genuine issues of material fact and summary judgment is appropriate. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 34) be **GRANTED;** this Order disposes of all pending matters in this case and the Clerk is **directed** to enter judgment for the Defendant.