**Beverly SCOTT, Plaintiff,**

v.

**PIZZA HUT OF AMERICA, INC., Defendant.**

**No. 8:99CV257–T–17A.**

United States District Court, M.D. Florida, Tampa Division.

April 6, 2000.

Mitchell L. Fraley, Fraley & Fraley, P.A., Tampa, FL, for Beverly Scott, plaintiff.

Elizabeth J. Du Fresne, Edwin G. Torres, Steel Hector & Davis, LLP, Miami, FL, for Pizza Hut of America, Inc., defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's Motion for Summary Judgment (Dkt.12), Memorandum in Support (Dkt.13), Statement of Facts (Dkt.14), and Plaintiff's response (Dkt.20).

### Standard of Review

It is proper to enter summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The lack of a genuine issue of material fact must be demonstrated by the moving party, and can be stated by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317 at 323, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when a reasonable jury considering the evidence as a whole could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Material facts are those which will affect the outcome of the trial under governing law. *See id.* at 248, 106 S.Ct. 1348. A court considering summary judgment must consider all of the evidence in a light most favorable to the non-moving party. *See Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir.1983).

### Factual Background

Plaintiff Beverly Scott (hereinafter "Scott") began employment with Defendant Pizza Hut of America, Inc. (hereinafter "Pizza Hut") on April 16, 1998. Plaintiff worked for Pizza Hut as a part-time pizza delivery driver for approximately 7 months, ending her employment on or around October 10, 1998. At all times during her employment, Plaintiff worked from a pizza delivery store essentially consisting of a single room from which several employees worked. Scott indicated that, at the most, she spent approximately 25% of her shifts in the store. The remainder of Plaintiff's time was spent delivering pizzas.

Beginning in June 1998, incidents occurred at the Pizza Hut store that create the basis for Scott's Title VII hostile work environment and Florida Civil Rights Act claim. They are as follows:

During June 1998, Scott overheard a co-worker refer to a customer with phrases like "fuck her" and "the old bitch." (Scott Depo. at 13–14). Scott also overheard a shift manager (Dennis) and another co-worker engaging in a discussion that was "sexual in nature," in Scott's presence, but not directed to Scott. (Scott Depo. at 15–17). The comments involved homosexual experiences and jokes implying that Scott was a prostitute. These comments were made at least five or six times until Dennis was reprimanded.

On several occasions Scott witnessed a male co-worker, Dennis, pick up a female co-worker, "lay her on the floor and put his hands on her body." (Scott Depo. at 17–18).

Throughout her employment, particularly "when Dennis would make his remarks ...," other employees would use harsh language like " 'fuck' and 'bitch' and 'cunt'." (Scott Depo. at 23).

A co-worker drew an obscene gesture, "a hand with a finger sticking up," in an air-conditioner's condensation. (Scott Depo. at 23).

Two co-workers once indicated that Scott was a "bitch" and that she was "... being bitchy because she doesn't get enough sex." (Scott Depo. at 30). The co-workers went on to say that "[i]f she'd go out and get some sex, she wouldn't be so bitchy." *Id.* Scott indicated that the co-workers used words like "fuck" during this incident also. *Id.* After Scott complained to the store manager, such comments were never made to Scott again. *Id.* at 36.

During September of 1998, co-workers played rap music with vulgar lyrics like "kill the fucking bitch," "make her spread her legs," and "rape her." (Scott Depo. at 43). After hearing the rap lyrics, Scott complained to the shift manager, who made no effort to shut the tape off. Scott heard the music for approximately three or four minutes.

The next day, Scott called the district Pizza Hut office and complained about the

rap music to Doug Hubbard. Hubbard offered Scott a transfer to another store, which Scott refused because of the increased distance that she would have to drive. Hubbard also asked Scott to prepare a letter describing the incident, which she sent according to his instructions. Mike, the store manager, also contacted Scott. She complained to him about the rap music incident. In a subsequent conversation he assured her "that the problem had been solved." (Scott Depo. at 55).

Upon her return to work, the tape player had been removed. Scott indicated that she felt like she was among people who were upset with her because a few of her co-workers would stare at her, making comments and continuing to use foul language. Scott indicated that she thought it was a "hostile environment," and that she slowed down on her deliveries to avoid returning to the store.

The final incident took place when two co-workers made homosexual remarks about two other co-workers in Scott's presence. Scott left work early as a result, telling her supervisor about the comments. That incident effectively marked the end of her employment with Pizza Hut and she officially resigned on October 15, 1998.

Scott filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Florida Civil Rights Act (FCRA), Florida Statutes, Chapter 760.10. At the close of discovery, Pizza Hut moved for summary judgment pursuant to Fed. R.Civ.P. 56(c) as to both causes of action.

## Discussion

In its motion for summary judgment, Pizza Hut argues that it is entitled to summary judgment on Scott's Title VII and FCRA hostile work environment claims because Scott was not subject to harassment based on her sex and because the level of harassment was not sufficiently severe and pervasive to affect a term of condition of Scott's employment. Alternatively, Pizza Hut argues that it is not liable as a matter of law because it exercised reasonable care to deal with the complained-of harassment and Scott failed to take advantage of Pizza Hut's policies and options that it made available to Scott. Finally, Pizza Hut argues that if none of the preceding arguments persuade this Court, it is nonetheless entitled to a summary judgment determination that Scott is precluded from punitive damages.

■ A cause of action for hostile work environment sexual harassment exists under Title VII and FCRA when: (1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome sexual harassment; (3) that harassment was based on the plaintiff's sex; (4) the harassment was so severe and pervasive that it affected a term, condition or privilege of employment; and (5) there is a basis for employer liability. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999); *see also Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir.1998) (stating that because FCRA is modeled after Title VII, FCRA is analyzed under Title VII standards). Pizza Hut argues that any harassment that Scott was subject to was not based on her sex, that any harassment was not sufficiently severe and pervasive to affect a term or condition of her employment, and that no basis for employer liability exists. Pizza Hut therefore challenges the third, fourth and fifth elements necessary to support a claim of hostile work environment sexual harassment.

### 1. Discrimination Based on Sex

■ Pizza Hut first argues that any harassment that Scott was subject to fails to amount to harassment based on Scott's sex. In *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court indicated

that conduct violates Title VII only when it is based on sex in that "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." The Court also stated that workplace conduct must not simply be "tinged with offensive sexual connotations, but actually [constitute] 'discrimination ... because of sex.'" *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75 at 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Scott successfully plead, and her depositions show, that this element of her Title VII and FCRA claims is satisfied. According to the facts interpreted in a light most favorable to Scott, Scott was subject to at least seven incidents that either implied that she was a prostitute, including co-worker/shift manager Dennis Ulrich's comments about Scott's "other job on the street," or that she needed to "go out and get some sex," so that "she wouldn't be so bitchy." (Smith Depo. at 28–30). The facts indicate that Scott was the only target of these comments. The record further indicates that male workers were not subject to these incidents. As a result, Scott was subject to disadvantageous conditions to which males workers were not.

## 2. Severe and Pervasive Discrimination

Pizza Hut further challenges Scott's claim on the basis that any harassment that she experienced was not sufficiently severe and pervasive to constitute a hostile work environment claim under Title VII and FCRA. Title VII and FCRA go beyond "the ordinary tribulations of the work place, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775 at 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (quoting B. Lindemann & D. Kadue, *Sexual Harassment in Employment Law* 175 (1992)). The Supreme Court indicated that Title VII is not to be interpreted to become a "general civility code for the American workplace," and that "simple teasing, offhand comments, and isolated incidents" will not satisfy the severe and pervasive harassment requirement. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). The Supreme Court further indicated that Title VII does not reach or prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Id.* Courts cannot mistake ordinary workplace socializing or horseplay for sufficiently hostile sexual harassment. *See id.*

The correct inquiry is whether the alleged harassment is offensive on both subjective and objective levels. *See Faragher*, 524 U.S. at 787, 118 S.Ct. 2275. Harassment is subjectively offensive when the Plaintiff/victim in fact perceived the harassment to be hostile or abusive. *See id.* Harassment is objectively offensive when the reasonable person would have found the alleged harassment hostile and abusive. *See id.* In concluding that harassment was sufficiently severe and pervasive on an objective level, a court must look at the totality of the circumstances. *See id.*

■ Further, this Court must consider several factors in determining whether the harassment is objectively "hostile" or "abusive." They are: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating or merely an offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *See Harris*, 114 S.Ct. at 372; *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir.1997); *Sullivan v. Lake Region Yacht and Country Club, Inc.*, 996 F.Supp. 1463, 1466 (M.D.Fla.1998).

In *Sullivan,* this Court held that alleged facts were sufficiently severe and pervasive so as to create a hostile or abusive work environment. *See id.* at 1467. The plaintiff indicated that her supervisor made several direct comments to the plaintiff, including statements that he would like to see the plaintiff walk up the stairs, that he "liked her tight buns," that he wanted to touch her private parts, and asked whether she "wanted to see where the Shetland Pony bit [him]," indicating his genital area. *Id.* Furthermore, the supervisor actually followed the plaintiff up the stairs on several occasions, typically making the "buns" comment. *Id.* In addition, the supervisor in *Sullivan* allegedly touched the plaintiff's buttocks, indicating for the plaintiff to look at his genital area. *See id.* Finally, the plaintiff indicated that her supervisor made several phone calls to her home asking her out and making sexual jokes or comments. *See id.*

In *Maddin v. GTE of Florida, Inc.,* 33 F.Supp.2d 1027 (M.D.Fla.1999), this Court granted summary judgment in a Title VII action because the alleged facts could not lead a rational trier of fact to conclude that the plaintiff's harassment was sufficiently severe and pervasive. In *Maddin,* the plaintiff first alleged that her employer failed to properly handle her Family and Medical Leave Act (FMLA) paperwork. *See id.* at 1029. Second, she alleged that her employer asked her questions related to her pregnancy and miscarriage for which she sought FMLA leave. *See id.* Third, she indicated that her employer addressed her with terms like "gorgeous," "babe," "doll," "good-looking," "honey," "sweety," and "beautiful." *Id.* Fourth, her supervisor would play with the plaintiff's hair while she talked on the phone. *See id.* Fifth, the supervisor told the plaintiff that he and the plaintiff would have been lovers in another life. *See id.* The plaintiff in *Maddin* finally alleged that on one occasion her supervisor put his hand over her mouth in a meeting, telling her to "shut up." *Id.*

Most important, the Eleventh Circuit, sitting en banc, recently affirmed summary judgment in a Title VII action because the complained-of acts were not sufficiently severe or pervasive. *See Mendoza v. Borden, Inc.,* 195 F.3d 1238 (11th Cir.1999) (en banc). In *Mendoza,* the plaintiff alleged that her supervisor followed her constantly, staring her up and down, without saying anything. *See id.* at 1242. On two occasions he froze his gaze on the plaintiff's genital area and made a sniffing motion. *See id.* at 1243. On one occasion, the supervisor walked by the plaintiff's desk and made a sniffing motion. *See id.* Physical contact ensued, where the supervisor rubbed his right hip against the plaintiff's left hip, touched her shoulder and smiled when she turned. *See id.* Finally, the supervisor responded "Yeah, I'm getting fired up too," when the plaintiff came into his office and indicated that she was only there to work. *See id.*

The en banc panel in *Mendoza* ruled that the complained-of acts did not rise to the severe and pervasive level necessary to support a Title VII claim. The panel indicated that the complained-of acts were neither physically threatening, interfering with the plaintiff's job performance, nor severe. *See id.* at 1248. In holding that the complained-of acts were not physically threatening, the panel cited *Hall v. Guss Const. Co.,* 842 F.2d 1010 (8th Cir.1988), where the Eight Circuit held that harassment was not sufficiently severe and pervasive when the defendant's employees held women down so as to allow the women's breasts and legs to be touched by other employees. The panel concluded that Mendoza's supervisor, even while touching his hip to hers, did not constitute physically threatening or humiliating conduct. *See Mendoza,* 195 F.3d at 1248. The en banc panel also concluded that the complained-of actions did not unreasonably

interfere with Mendoza's job performance. *See id.*

Finally, the *Mendoza* panel found that the complained-of incidents were insufficiently severe. The panel cited *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir.1998), in which the Second Circuit held it insufficiently severe and pervasive where a plaintiff received comments about her posterior and unwelcome contact with her breasts. The panel also cited *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745 (4th Cir.1996), in which the plaintiff's Title VII claim failed where a male supervisor bumped into [the plaintiff], positioned a magnifying glass over [the plaintiff's] crotch, flipped [the plaintiff's] tie over to see its label, gave him a congratulatory kiss at a wedding, and stared at him in the bathroom. The panel ruled that Mendoza's facts simply could not compare in severity to the actions in either the Second or Fourth Circuit cases, which also could not state a Title VII claim.

█ The complained-of acts in this case, in light of *Mendoza* and this Court's earlier holdings, are insufficiently severe or pervasive to support a Title VII or FCRA claim for hostile work environment sexual harassment. First, the complained-of acts are insufficiently severe to amount to a Title VII violation. Scott complains of rude language, comments to her that "[i]f she'd go out and get some sex, she wouldn't be so bitchy," seeing the tracing of an obscene gesture in an air-conditioner's condensation, another employee being picked up and touched, foul lyrics being played in a song and threatening stares from other employees. All of these incidents, while boorish, stupid, and inconsiderate, do not rise to the level of the complained-of treatment in *Mendoza, Sullivan, Hall* or *Hopkins*.

Second, none of the complained-of acts were physically threatening or humiliating. None of the complained-of act from Pizza Hut employees involved physical contact, except in one instance, in which a completely different employee was touched. Scott has therefore failed to show any instances of physically threatening or humiliating conduct.

Third, Scott hasn't shown that the conduct unreasonably interfered with her job performance. The mere fact that Scott drove back to the store more slowly in dread of facing boorish behavior does not establish unreasonable interference. According to her own deposition, Scott was only at the store for 25% of each shift at the most. The dread that Ms. Scott felt certainly doesn't rise to that undoubtedly felt by employees kissed or held down against their will like the *Hall* and *Hopkins* cases depict. As a result, the discrimination that she faced could not have unreasonably interfered with her performance to a greater degree.

*Conclusion*

The facts alleged by Scott, even when construed in a light most favorable to her, fail to establish severe and pervasive discrimination that altered a term or condition of her employment. As a result, Scott is unable to establish a prima facie case of hostile work environment sexual harassment under Title VII and FCRA. Accordingly, it is

**ORDERED** that Defendant's Dispositive Motion for Summary Judgment (Dkt.12) is **granted**. The Clerk of Court shall enter a final judgment for Defendant.