Glorimar **COLON**, Plaintiff,

v.

**ENVIRONMENTAL TECHNOLOGIES, INC.,** Defendant.

**No. 8:00–CV–1219–T–MSS.**

United States District Court, M.D. Florida, Tampa Division.

Nov. 6, 2001.

Glorimar Colon, Port Richey, FL, pro se.

Bradley M. Bole, Rahdert, Steele & Bryan, P.A., St. Petersburg, FL, for plaintiff.

Peter W. Zinober, Danielle R. May, Luisette Gierbolini, Zinober & McCrea, P.A., Tampa, FL, for defendant.

## ORDER

SCRIVEN, United States Magistrate Judge.

THIS COMES before the Court for consideration of Defendant's Motion for Summary Judgment (Dkt.37), Plaintiff's opposition thereto (Dkt.50), and the documentary evidence filed in support thereof. For the reasons stated below, the motion for summary judgment is GRANTED and all claims against Defendant are DISMISSED with prejudice.

### PROCEDURAL HISTORY

On June 20, 2000, Plaintiff Glorimar Colon filed this action in the Middle District of Florida against her former employer, Defendant Environmental Technologies, Inc. ("ETI"). In her amended complaint, Plaintiff alleges that ETI discriminated against her on the basis of her sex by subjecting her to a sexually hostile work environment, failing to take corrective action to end the harassment and constructively discharging her from employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Right Act of 1991, 42 U.S.C. § 1981A, *et seq.* ("Title VII").

By this motion, Defendant argues that summary judgment is appropriate in this action because (1) Plaintiff, cannot establish that any conduct alleged to be unlawful was sexual in nature or based on her gender; (2) the alleged conduct was not severe and pervasive so as to alter any

term or condition of Plaintiff's employment; (3) Plaintiff has not established a basis for employer liability; and (4) Plaintiff has not established that a reasonable person in her position would have felt compelled to resign.

## UNDISPUTED FACTS

1. Plaintiff began working as a line leader in the GRD department at ETI on April 9, 1998. (Colon Depo. Sept. 12, 2000 at 13, 25, 35).

2. Some time in July of 1999, Plaintiff started having problems with a co-worker and line leader from another department, Al Rosado, whose workstation was approximately 75 yards away from Plaintiff's workstation. (Colon Depo. at 36, 40, Defendant's Exhibit 8).

3. The entrance to the factory and the time clock used by the relevant employees are positioned such that Rosado passed within fifty feet of Plaintiff's workstation each day after he clocked in and to get to his own station. (Colon Depo. at 39, 40, 47–48, 71, 107–108, Defendant's Exhibit 8).

4. In addition, the washroom that Rosado used was also near Plaintiff's workstation. (Colon Depo. at 40, 71, 107–108).

5. In July 1999, Plaintiff and a co-worker from Plaintiff's department, Elia Corona, were standing at their workstation when Rosado made offensive comments and gestures at Corona while heading toward his workstation from the time clock. (Colon Depo. at 64–65).

6. For purposes of this motion the Court accepts as true that Rosado called Corona a *perra*, a Mexican expletive that translates to "bitch," "whore," or "person paid for sex," called her stupid, grabbed his crotch, made an offensive hand gesture that signified the "f word," and spit on the floor. (Colon Depo. at 42, 47, 53–54, 63, 68).

7. After Rosado left, Corona and Plaintiff walked to Rosado's workstation and a confrontation between Rosado and Plaintiff ensued. (Colon Depo. at 45).

8. Alberson tried to break off the encounter but Plaintiff would not leave until Plaintiff's supervisor escorted her away. (Alberson Depo. at 15).

9. After Plaintiff and Corona returned to their workstation, Alberson contacted the Human Resources Director, Robert Hogue, and informed Hogue of what had transpired. (Hogue Depo. at 17).

10. The same day, Hogue convened a meeting between himself, Rosado, Rosado's supervisor, Plaintiff, Plaintiff's supervisors, Rosado's wife, and two company managers. (Hogue Depo. at 19).

11. At the meeting, Plaintiff and Rosado were allowed to make statements. (Colon at 19–20).

12. Hogue asked if they had any witnesses and neither Plaintiff nor Rosado disclosed any. (Colon Depo. at 20).

13. Thereafter, Hogue warned both Plaintiff and Rosado that they would face disciplinary action if the verbal confrontations continued. (Hogue Depo. at 20–21).

14. Further, Hogue instructed Rosado to stay away from Plaintiff's department. (Colon Depo. at 59).

15. The Court accepts as true that when Rosado punched out at the time clock the same day, he passed Plaintiff's workstation, grabbed his

crotch and laughed at her. (Colon Depo. at 67).

16. Additionally, the Court accepts as true that between July 1999 and September 23, 1999, on an almost daily basis, except for a two week time frame when the conduct ceased entirely, Rosado would make the same offensive gestures and comments to Plaintiff when he punched in, passed to use the washroom or exited the work area. (Colon Depo. at 71, 74, 80–81, 105, 107–108).

17. Plaintiff concluded that Rosado behaved in this manner because Rosado was angry at Plaintiff and Corona for complaining to management about the first incident in July. (Colon Depo. at 72–73).

18. Plaintiff complained of Rosado's conduct on a daily basis to her supervisors. (Colon Depo. at 74).

19. Hogue called a second meeting in mid-August 1999, during which he informed Rosado and Alberson of Plaintiff's second complaint, directed Rosado to cease his conduct, and instructed Rosado to use the time clock and washroom at the opposite end of the plant. (Hogue Depo. at 24).

20. After this second meeting, Rosado's conduct toward Plaintiff stopped for a couple of weeks but resumed shortly thereafter. (Colon Depo. at 72, 105).

21. On September 23, 1999, Plaintiff resigned her position. (Colon Depo. at 35).

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment may only be entered "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". See Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The moving party is entitled to judgment as a matter of law if the nonmoving party cannot sufficiently show an essential element of the case as to which the nonmoving party has the burden of proof." Cornelius v. Town of Highland Lake, 880 F.2d 348, 351 (11th Cir.1989). Mere allegations of denial are insufficient to meet the burden of opposing summary judgment, and the party resisting summary judgment "must do more than simply show that there is some metaphysical doubt as to the material fats." Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Finally, the relevant rules of substantive law dictate the materiality of a disputed fact. Thus, the decision of summary judgment in this case must be made with reference to the standard of proof applicable to the claims or in which the motion is brought. See Rollins v. TechSouth, Inc., 833 F.2d 1525, 1527–28 (11th Cir.1987). It is against this standard that the Court addresses the parties' contentions below.

## DISCUSSION

Plaintiff brings this suit under Title VII of the Civil Rights Act of 1964, which precludes an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals' race, color, religion,

sex or national origin." 42 U.S.C. § 2000e–2(a). Sexual harassment is a form of sex discrimination prohibited by Title VII. *See Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Plaintiff specifically alleges the form sexual harassment referred to as "hostile work environment"[1] which is based on "bothersome attentions or sexual remarks that are sufficiently severe or pervasive to create a hostile work environment." *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 751, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

■ To establish a prima facie showing of hostile environment sexual harassment, Plaintiff must show:

(1) that she belongs to a protected group;

(2) that she has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature;

(3) that the harassment complained of was based upon sex;

(4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and

(5) that the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Gupta v. Florida Board of Regents,* 212 F.3d 571, 582 (11th Cir.2000) (citing *Mendoza v. Borden Inc.,* 195 F.3d 1238, 1245 (11th Cir.1999), *cert. denied,* 529 U.S. 1068,

120 S.Ct. 1674, 146 L.Ed.2d 483 (2000)). To meet her prima facie burden, Plaintiff asserts five distinct types of conduct on the part of Rosado: (1) a hand gesture signifying the "f word"; (2) grabbing his crotch; (3) calling Plaintiff stupid; (4) spitting on the floor, and (5) use of the expletive *perra.* (Colon Depo. at 42, 47, 53–54, 63, 68). For the reasons described below, Plaintiff's evidence fails to satisfy her prima facie burden with respect to the third and fourth elements.[2]

### 1. Whether the harassment complained of was based upon sex.

■ In order to prevail in a sexual harassment suit of this nature, the Eleventh Circuit requires the Plaintiff to demonstrate that "but for the fact of her sex, she would not have been the object of harassment." *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982). In addition, "[p]ersonal animosity is not the equivalent of sexual discrimination and is not proscribed by Title VII ... The plaintiff cannot turn a personal feud into a sex discrimination case." *McCollum v. Bolger,* 794 F.2d 602, 610 (11th Cir.1986). In Plaintiff's September 12, 2000 deposition, she testifies that she had never had problems with Rosado during the first fourteen months of her employment with ETI. (Colon Depo. at 40). Plaintiff also testified that she had never seen Rosado make the offensive gestures prior to that first incident in July of 1999. (Colon Depo. at 54). More importantly, Plaintiff admits that she believed Rosado targeted her for the daily harassment because Plaintiff and Corona had complained about him to management.

---

**1.** Plaintiff does not allege nor do the facts support a claim under the premise of *quid pro quo* sexual harassment.

**2.** It is undisputed that Plaintiff, a woman is a member of a protected class under the Act; thereby meeting the first element. Next, it is clear that whether the conflict between Rosa-

do and Colon began by Colon's provocation, as Defendant alleges in its summary judgment, Colon's persistent complaints to company officials demonstrates that she did not welcome the conduct. The second element is, therefore, sufficiently established for summary judgment purposes.

(Colon Depo. at 72–73). Plaintiff further admits that she did not interpret Rosado's conduct as meaning that he wanted to have sex with her. (Colon Depo. at 70). Instead, Plaintiff believed the conduct was intended to make her angry, to insult her or to be disrespectful. (Colon Depo. at 62–67).

When questioned about why she felt she was being *sexually* harassed, Plaintiff responded that "any advances or any gestures that are not welcome or anything like that is sexual harassment." (Colon Depo. at 71). Plaintiff's statement is an inaccurate portrayal of the law on sexual harassment. While there are a number of ways in which conduct that is not explicitly sexual can nonetheless constitute sexual harassment, the evidence Plaintiff presents does not fit within any of those specific paradigms.[3]

■ For example, harassing behavior devoid of sexually explicit content may still be considered gender-based if it is directed at women and motivated by animus against women. *See Robinson v. Jacksonville Shipyards,* 760 F.Supp. 1486, 1522 (M.D.Fla.1991) (citing *Andrews v. City of Philadelphia,* 895 F.2d 1469 (3d Cir.1990)). Plaintiff has not shown that Rosado directed the offensive hand gestures, spitting, crotch grabbing, and name calling solely at women or that Rosado was motivated by animus against women. Hogue, however, testifies that Rosado had been disciplined for making the crotch-grab gesture at another man in the factory following a workplace dispute. (Hogue Aff. ¶ 8). This testimony is supported by the affidavits of two ETI employees who witnessed Rosado making the same gestures toward other men in the factory. (Parker Aff. ¶ 2 and Nunez Aff. ¶ 2). Although there is a dispute about the admissibility of the latter two witness' statements, the unrebutted testimony of Hogue alone would stand to support the gender neutral view of Rosado as an equal opportunity offender.[4] More importantly, it is apparent from the facts and Plaintiff's own admission that Rosado targeted her because she confronted him about his conduct toward Corona, not because she was a woman. (Colon Depo. at 72–73). Plaintiff further testifies that she never had problems with Rosado before she and Corona reported his conduct to management. (Colon Depo. at 40). Plaintiff has failed, therefore, to put forth evidence demonstrating that Rosado targeted only women and that he was motivated by animus against women.

■ A second gender-based paradigm identified in *Robinson* is *sexual* behavior directed at women that raises an inference that the harassment is based on their sex. *See* 760 F.Supp. at 1522–1523. Here, though the crotch-grab gesture involved drawing attention to Rosado's genitals, it cannot automatically be said to be sexual in nature when unaccompanied by any sexual invitation or suggestion and, as supported by Hogue's testimony, was directed to men as well. *See Richmond–Hopes v. City of Cleveland,* 168 F.3d 490, 1998 WL 808222 at *5 (6th Cir.1998) (affirming sum-

---

3. *See Robinson v. Jacksonville Shipyards,* 760 F.Supp. 1486, 1522 (M.D.Fla.1991) (detailing case law concerning gender-based harassment paradigms)

4. Plaintiff also challenges the admissibility of paragraph eight (¶ 8) of Hogue's affidavit on hearsay grounds. Specifically, Plaintiff contends that Hogue's statement is hearsay because it relies on the statements of Greg Par-

ker and Carlos Nunez. The Court notes that Hogue has always been available to Plaintiff for examination. Additionally, the Court relies for summary judgment purposes on Hogue's testimony that Rosado was *disciplined* for directing the crotch grabbing gesture at other male employees. There are no grounds, therefore, for the Court to strike or exclude paragraph 8 of Hogue's affidavit as Plaintiff has requested.

mary judgment in favor of employer where plaintiff admitted harasser's offensive crotch grabbing was not a sexual invitation and was directed at both male and female employees); *see also Foresta v. Ameritech Corp.,* 1999 WL 1499257 at *4 (N.D.Ill. 1999) (granting employer's motion for summary judgment where harasser grabbed his crotch in front of male and female employees and plaintiff did not view the act as a sexual gesture). Nor can it be said that the hand gesture signifying the "f word," calling Plaintiff stupid, spitting or referring to her as a *perra* was directed at her in a sexually suggestive manner. These gestures were almost always accompanied by other conduct intended to insult and offend the Plaintiff, not to solicit sexual contact. In fact, Plaintiff admits that Rosado acted in this manner to anger and insult her and that she did not believe any of the conduct was intended to convey or suggest that he wanted to have sex with her or Corona. (Colon Depo. at 66). The crotch grabbing, name calling, spitting and hand gesture signifying the "f word," therefore, are not *sexual* behavior and do not raise an inference on that basis that Rosado's treatment of Plaintiff was based on her gender.

■ A third gender-based paradigm identified in *Robinson* is behavior that is not directed at a particular individual or a group of individuals, but is disproportionately more offensive or demeaning to one sex. *See* 760 F.Supp. at 1522–1523. Plaintiff offers no evidence that the crotch grabbing, calling Plaintiff stupid, spitting or hand gesture signifying the "f word" are disproportionately more offensive to women than men. As for the expletive *perra,* however, Plaintiff contends it is a gender-specific insult that translates literally to "bitch" or "whore" when directed at a female person in Spanish. Defendant contends that the term refers more generally to "a person paid for sex." Under either interpretation, the term might be found disproportionately more offensive or demeaning to a woman insofar as such insults are not generally used toward men and carry a connotation that is more demeaning of women than men. *See Winsor v. Hinckley Dodge, Inc.,* 79 F.3d 996, 1000–01 (10th Cir.1996) (concluding that epithets like "bitch" and "whore" are intensely degrading to women and are sufficient to establish a Title VII claim); *see also Hocevar v. Purdue Frederick Company,* 223 F.3d 721, 737–738 (8th Cir.) (noting that mere use of the word "bitch," without other evidence of sex discrimination, is not probative of a misogynist attitude); *Carter v. Chrysler, Corp.,* 173 F.3d 693 (8th Cir.1999) (noting that gender-based insults, including the term "bitch" may give rise to an inference of discrimination based on sex); *Burns v. McGregor Electronic Industries Inc.,* 989 F.2d 959, 964 (8th Cir.1993) (noting that use of "bitch" to a woman was harassment based on her sex); *cf. Galloway v. General Motors,* 78 F.3d 1164, 1167 (7th Cir.1996) (holding that a male co-worker's repeated comment that the plaintiff was a "sick bitch" does not automatically, but may in a different context, constitute discrimination because of sex).

In sum, Plaintiff has failed to establish that the crotch grabbing, spitting, calling Plaintiff stupid, and hand gesture signifying the "f word" were based upon her gender. Rather, other evidence suggests that Rosado's treatment of Plaintiff was motived not by her gender, but by her intervention on behalf of Corona. Title VII prohibits discrimination because of sex; it is not a shield against harsh treatment in the workplace. *See McCollum,* 794 F.2d at 610. As offensive, ignorant and boorish as Rosado's conduct may have been, no reasonable person could find that but for Plaintiff's gender she would not have had to endure Rosado as such. A reasonable person might find, however,

that because of the different meanings ascribed to the expletive *perra*, Rosado directed the insult at her because of her sex. Plaintiff's claim as to Rosado's use of that term, therefore, survives the second element of her prima facie case.

### 2. Whether the harassment complained of was sufficiently severe or pervasive.

Having survived the second element of her prima facie case, Plaintiff must show that the abuse she suffered from Rosado's conduct was so severe and pervasive as to alter the terms, conditions or privileges of employment. *See Meritor,* 477 U.S. at 67, 106 S.Ct. 2399. Title VII is not a general civility code; therefore, not all offensive conduct in the workplace is actionable as sexual harassment. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80–81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). The Court must assess whether the alleged harassment is offensive on both subjective and objective levels. *See Scott v. Pizza Hut of America, Inc.,* 92 F.Supp.2d 1320, 1324 (M.D.Fla. 2000) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)); *see also Johnson v. Booker T. Washington Broadcasting Serv., Inc.,* 234 F.3d 501, 509 (11th Cir. 2000). Harassment is subjectively offensive when the victim in fact perceived the harassment to be hostile or abusive. *See Scott,* 92 F.Supp.2d at 1324. Harassment is objectively offensive when a reasonable person would have found the alleged harassment hostile and abusive. *See id.* In determining whether the conduct at issue is objectively severe and pervasive, the Court must look at the "totality of the circumstances." *See id.; see also Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982).

The "totality of the circumstances" standard requires that the Court view the Plaintiff's environment as a whole even though no individual episode, viewed by itself, crosses the Title VII threshold. *See Robinson,* 760 F.Supp. at 1524; *see also Vance v. Southern Bell Tel. & Tel. Co.,* 863 F.2d 1503, 1510–11 (11th Cir.1989) (holding that the district court erred in requiring plaintiff to establish a claim as to each allegation of harassment); *Draper v. Coeur Rochester, Inc.,* 147 F.3d 1104, 1109 (9th Cir.1998) (holding "[d]iscriminatory behavior comes in all shapes and sizes, and what might be an innocuous occurrence in some circumstances may, in the context of a pattern of discriminatory harassment, take on an altogether different character, causing a worker to feel demeaned, humiliated, or intimidated on account of her gender."); *Williams v. General Motors Corp.,* 187 F.3d 553, 562–564 (6th Cir.1999) (holding that the district court erred by dividing and categorizing reported incidents of harassment, divorcing them from their context and depriving them of their full force). For example, this Court in *Robinson,* 760 F.Supp. at 1524 has established that:

> [T]he [severe and pervasive] analysis cannot carve the work environment into a series of discrete incidents and measure the harm adhering in each episode. Rather, a holistic perspective is necessary, keeping in mind that each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment created thereby may exceed the sum of the individual episodes. "A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents but on the overall scenario."

*Id.* at 1524 (citing *Andrews,* 895 F.2d at 1484).

The Court has already established that most of Rosado's alleged conduct, when

viewed in isolation, does not meet the Title VII threshold because there is no evidence that Rosado targeted Plaintiff because of her gender and that Rosado's use of the expletive *perra* presented a material dispute whether the term is a gender-specific or gender-neutral insult in the abstract and as used in this case. Nevertheless, under the totality of the circumstances analysis the Court must consider all of the complained-of conduct, including any that was not directed at Plaintiff because of her sex in assessing in context the severity of the conduct as intended and as reasonably perceived. *See id.* Accordingly, the instances of alleged harassment that initially failed the second element of Plaintiff's prima facie showing now reenter the analysis for purposes of delineating the totality of the circumstances under the objective prong of the third element. The Supreme Court has established the following factors for evaluating the totality of the circumstances: (1) the frequency of discriminatory conduct; (2) the severity of the discrimination; (3) whether the conduct is physically threatening or humiliating or a mere utterance; and (4) whether the conduct unreasonably interferes with the Plaintiff's performance at work. *Faragher*, 524 U.S. at 787–788, 118 S.Ct. 2275.

 For purposes of summary judgment, the Court accepts as true that Plaintiff subjectively perceived Rosado's conduct as hostile or abusive. The evidence does not, however, support Plaintiff's claim that Rosado's conduct was so objectively offensive that a reasonable person would have found the alleged harassment hostile and abusive. For example, even if the Court were to accept Plaintiff's assertion that Rosado's mere offensive utterances continued on an almost daily basis following the July 1999 incident, Plaintiff admits that the conduct lasted only three months and that Rosado stopped bothering her for one-to-two weeks during that time. (Colon Depo. at 41–34, 71–72, 74, 80–81, 105).

Plaintiff's memorandum emphasizes the frequency of Rosado's conduct and suggests that frequency is somehow more important than the remaining factors. To the contrary, the Eleventh Circuit has held that conduct does not constitute actionable sexual harassment where plaintiff has only demonstrated that the conduct was frequent. *Mendoza*, 195 F.3d at 1248. Therefore, the alleged frequency of Rosado's conduct is not dispositive of whether the conduct was severe and pervasive.

Additionally, Colon admits that Rosado's insults did not involve actual physical contact or overt physical threats. (Colon Depo. at 81–83.) Defendant cites a persuasive litany of cases in which Courts have rejected sexual harassment claims under circumstances where the alleged harassment involved a much greater degree of physical harm or intimidation. *See, e.g., Mendoza*, 195 F.3d at 1245–52; *Shepherd v. Comptroller of Public Accts. of Texas*, 168 F.3d 871 (5th Cir.1999), *cert. denied*, 528 U.S. 963, 120 S.Ct. 395, 145 L.Ed.2d 308 (1999) (holding that a series of "boorish and offensive" sexual remarks, coupled with repeated touching of plaintiff's arms, over a period of more than a year, were insufficient to establish severe and pervasive element); *Gupta*, 212 F.3d at 584–86 (holding that touching the inside of plaintiff's thighs, touching plaintiff's hand, and lifting plaintiff's dress hem were not severe and pervasive conduct); *see also Scott*, 92 F.Supp.2d at 1326 (granting summary judgment for employer in part because there was no evidence of physical contact with plaintiff). Although *Plaintiff* claims that she felt Rosado's crotch-grabbing might at some point have escalated to a physical threat (Colon Depo. at 82), Plaintiff has provided no evidence that Rosado's conduct had in fact escalated to such a degree. Plaintiff's own testimony suggests that Rosado's conduct, although directed toward Plaintiff, took place across a considerable distance (Colon Depo. at

37–40, 46–47, Exhibit 8) and that Rosado had not touched Plaintiff or any other female employees (Colon Depo. at 82–83). Thus, construing the evidence in the light most favorable to the Plaintiff, the Court finds that no evidence has been adduced from which a jury could conclude that a reasonable person would have believed that Rosado's conduct created any threat of physical harm or intimidation.

Finally, Plaintiff testifies that she "wasn't able to perform [her] best as 100 percent because [she] had [Rosado's conduct] in the back of [her] mind." (Colon Depo. at 101). Plaintiff also testifies that she consulted a psychologist to manage the stress caused by Rosado's conduct. (Colon Depo. at 97–98). Plaintiff admits, however, that Rosado's conduct did not affect her work as she received no warnings, reprimands, counseling, or other form of discipline for poor work performance while employed by ETI, including during this relevant period. (Colon Depo. at 101). A reasonable person, therefore, could not find that Rosado unreasonably interfered with Plaintiff's work performance.

Weighing all of Plaintiff's evidence against the four factors of the totality of the circumstances analysis, a reasonable person could not conclude that Rosado's conduct was sufficiently severe and pervasive to affect a term or condition of Plaintiff's employment. Although Plaintiff contends her decision to resign affected a term or condition of her employment, it cannot be said that Plaintiff's voluntary act of resignation was forced upon her by Rosado's behavior. Rosado did not occupy a position of authority in Plaintiff's workplace and had no ability to affect nor did he in fact effect any change in the state of Plaintiff's employment. Plaintiff does not allege or adduce evidence that Defendant terminated, transferred, or demoted her as a result of Rosado's treatment of her.

Therefore, a reasonable jury could not conclude based upon Plaintiff's evidence that Rosado's conduct was sufficiently severe and pervasive to affect a term or condition of Plaintiff's employment.

For the foregoing reasons, the Court finds that the harassment complained of was either not based on Plaintiff's gender or, if so, was not sufficiently severe and pervasive to affect a term, condition or privilege of Plaintiff's employment. Absent a cognizable claim of sexual harassment, there is no basis for holding Defendant liable for Rosado's treatment of Plaintiff. Because Plaintiff's Title VII constructive discharge claim is contingent upon establishing sexual harassment and Plaintiff has failed in that burden, Plaintiff cannot establish a cognizable claim for constructive discharge.

### CONCLUSION

Accordingly, Defendant's motion for summary judgment is GRANTED. This case is DISMISSED with prejudice. All pending motions are denied as moot. The Clerk is DIRECTED to close this case.